1814.

ARDEN
v.
ARDEN.

</div>

Sale postponed for eight weeks.

------◦ ✳ ◦------

<div style="text-align:center">

*Executors of* J. J. ARDEN *against the Executors of* J. ARDEN,

</div>

<div style="text-align:right">

*Aug.* 29th
and *October*
13th.

</div>

In a suit between the representatives of a father, and the representatives of his son, where all the matters in controversy were referred to a master, the court refused to allow the exceptions made to the report; the transactions being very stale and ancient, and most of them family dealings and concerns, and the parties, and their witnesses, having been fully examined before the master.

Though the statute of limitations is no bar to a *legacy*, yet the court, in regard to very stale demands, will adopt the provisions of the statute, in the exercise of their discretion. Though a lapse of 30 years affords a presumption that a legacy has been paid, yet that presumption may be repelled by circumstances.

Where a testator directed his executors to sell his real estate, to pay debts and legacies, in case of a deficiency of the personal estate; and a bill filed by the executors of a legatee and creditor, prayed a sale of the real estate, the executors of the testator having admitted that the personal estate was insufficient, the court directed a master first to ascertain and report whether the executors had duly administered all the *assets*, before recourse could be had to the land, or determining whether the devisees in remainder were to be brought in.

*JACOB ARDEN*, the defendants' testator, being seised and possessed of considerable real and personal estate, on the

1814.

ARDEN
v.
ARDEN.

15th of *April*, 1778, made his last will, by which he gave to his son, the plaintiffs' testator, a legacy of 200*l*., payable three months after the testator's death; and he also gave a legacy of 100*l*. to his daughter *E*., and, for want of cash to discharge the said legacies, he directed and empowered his executors to sell any part of his estate they might think best, for that purpose.

The estate of the defendants' testator was indebted to the plaintiffs' testator, for 52 dollars and 36 cents, on account, and for three several bonds, executed by *J. Arden*, in 1766, 1767, and 1771, to several persons, and by them assigned to *Jacob J. Arden*, in 1787, and 1793, the amount of which, with interest, to the 19th of *October*, 1804, was 1,152 dollars and 35 cents. It was admitted, by the plaintiffs, that 100*l*., part of the legacy, had been paid; but they claimed, as due to them from the defendants' testator, the sum of 2,261 dollars and 6 cents.

The plaintiffs' testator made his will in *June*, and died in *July*, 1801.

The plaintiffs, in their bill, charged that the defendants refused to give an account of the real and personal estate of their testator, pretending that there was not enough to satisfy the debts and legacies, &c., and that they had no power to sell the real estate, &c. The bill prayed relief, &c., and for an account, and that so much of the real estate of the defendants' testator as might be necessary to pay and satisfy the plaintiffs' claim, might be sold, &c.

The answer of the defendants admitted all the material facts stated in the bill, except the amount of the debt claimed. On the 17th of *May*, 1813, there was an order of reference to a master to take an account, and to ascertain and report upon all the matters contained in the pleadings, and by consent, to examine the parties on oath, and all witnesses produced on either side.

On the 14th of *January*, 1814, the master made a report that there was due to the plaintiffs, upon the *legacy, bonds*, and several *accounts* mentioned in the pleadings, the sum of

1,435 dollars and 89 cents, according to the schedules annexed to his report.

1814.

ARDEN
v.
ARDEN.

To this report the defendants made the following exceptions:

1. That no credit was given to the defendants for 100*l.* stated to have been received, on the 15th of *July*, 1796, by the plaintiffs' testator, from *James Delancey*, with interest.

2. That no credit was given for 15*l.*, due to the defendants' testator, for house and rent, for *S.*, at *H.*, in 1782.

3. That no credit was given for 336*l.*, for board of plaintiffs' testator, his wife and children, from 1775 to 1782;

4. Nor for 36*l.*, paid by the defendants' testator for a substitute in the army for the plaintiffs' testator, in 1776;

5. Nor for 1925 dollars, the amount of certificates of part of the estate of the defendants' testator, the inventory of which was taken by one of the plaintiffs;

6. Nor for 6*l.*, for barn rent, &c., in 1782;

7. Nor for 3*l.* 2*s.* for articles furnished plaintiffs' testator in 1784.

8. Because *Th. Arden*, jun., was examined as a witness before the master.

9. Because the legacy, after a lapse of 30 years, ought to have been presumed to have been paid.

The plaintiffs expected to the report, because the defendants' testator had been credited for a butcher's stall 100*l.* instead of 17*l.*

These exceptions were reserved until the final hearing of the cause.

*R. Riker*, for the plaintiffs.

*Burr*, contra.

THE CHANCELLOR. The validity of the charges specified in the exceptions, depended upon the proofs before the master, and I see no sufficient reason to interfere with his re-

in respect to either of those charges which have not

been allowed. Some of them were not supported by proof, and others do not appear ever to have been made and intended, by the defendants' testator, as debts to be refunded by the son.

The transactions referred to are stale and ancient, and the more loose and difficult to unravel, because they were family dealings, and concerns between the father and son. It would be hazardous to sift too nicely such charges. The master was directed to take an account, and the parties have had a full and fair hearing before him, as well with their proofs as with their allegations. The demands on the part of the plaintiffs were chiefly founded on unquestionable vouchers, such as the will and the bonds; and the only objection to them arose from the presumption of payment, founded on the lapse of time. But these charges, brought forward on the part of the defendants, were destitute of any real accuracy and authenticity, and seem to have been set up more for the purpose of embarrassing the counter claims, than from any real sense of their solidity.

The objection to the demands of the plaintiffs, on the ground of time, is, *prima facie*, of great weight. After a lapse of 40 years, and when the representatives of the real and personal estate were all dead, the presumption of payment of a legacy was suffered to prevail, though the parties were admitted to make proof to repel the presumption, but it was not sufficient. (*Jones* v. *Turburville*, 2 *Vesey*, jun., 11.) And, in a subsequent case, the Master of the Rolls thought that 35 years would be sufficient to bar a legacy, on the presumption of satisfaction. (2 *Vesey*, jun. 272. *Pickering* v. *Stamford*.) There is no legal bar by force of the statute of limitations to a legacy. It cannot be pleaded, but still the court, justly averse to giving countenance to very stale demands, adopts the provisions of the statute as a guide in the exercise of its discretion. (*Higgins* v. *Crawford*, 2 *Vesey*, jun. 571. *Prince* v. *Heylin*, 1 *Atk.* 493. *Stackhouse* v. *Barnston*, 10 *Ves.* 466—7.) In the present case, however, the presumption of payment, both as

to the legacy and the bonds, is sufficiently repelled. The
executors, who were to pay the legacy, are alive, and parties
to the suit, and one of them expressly admits, that only one
moiety of the legacy has been paid ; and he also admits the
payment of interest, from time to time, on the bonds, and that
they are still due. In addition to this answer of one of the
defendants, he has been examined before the master, under
the order of reference, and his credit submitted to inqui-
ry. In this case, and upon these proofs, we must take the
admission of the only competent executor, and it will not do
to set aside these admissions on mere surmise of some collu-
sion. The question, on the fidelity of the defendants, as
trustees, is not now in issue, and it is averred, and so I
should infer, (as the objection has not been raised until now,)
that the examination of *Th. Arden* was by consent, and
at the instance, and for the benefit, of the other defendant ;
and if the legacy and bonds are due in any part, interest
thereon follows as of course.

The exceptions were, accordingly, disallowed, and the re-
port confirmed.

As the cause was set down for final hearing, as well
as upon the exceptions, another point submitted was, whether
a decree for the sale of the real estate ought to be made.
The prayer in the bill was for a sale of so much of the
real estate as should be necessary to pay the debt, and the
answer of the defendants admitted the insufficiency of the
personal, and the sufficiency of the real, estate. The debts
were not charged upon the real estate, but *the executors
were directed, in case the personal estate failed, to sell so
much of the real estate as should be requisite to pay the
legacies.* An objection was made, that the devisees were
not parties.

The cause coming on again, upon this last point, it was
referred back to the master, to ascertain and report whether
the executors had duly administered all the assets. This
was necessary to be ascertained, before recourse could be
had to the land, or before it was requisite to determine

*1814.*

ARDEN
v.
ARDEN.

*October* 13th.

whether the devisees in remainder, after the termination of the life estate of one of the executors, were to be brought in.

Order accordingly. (a)

(a) Note. The question of parties was not, afterwards, agitated, as certain lands were directed to be sold, which the executors had purchased after the testator's death, and with his funds.