# Good *against* Herr.

Equity will not interfere for the relief of a party who claims on the ground of a mistake of law. Hence, distribution having been made of the estate of an intestate among those who were supposed to be his collateral heirs-at-law, and all of whom joined in a release to the payer, one of them cannot afterwards recover a greater amount, on the ground of their mutual mistake of the law as to who were the heirs-at-law of the intestate.

ERROR to the District Court of *Lancaster* county.

This was an action of debt by the Commonwealth for the use of Daniel Good, administrator of Emanuel Herr deceased, against

Henry Herr and Fanny his wife, brought upon the defendants' recognizance in the Orphans' Court, acknowledged and entered into for the use of all persons interested in the real estate of Samuel Herr deceased, late of Strasburg township, on the 23d day of November 1837, when Fanny Herr, the conusor, accepted a purpart of the real estate of the deceased, at the appraisement of $20,666. 67.

The condition of the recognizance is, that if the said Fanny Herr pay to the legal representatives of Samuel Herr deceased, their several and respective shares of and in the valuation money of the said real estate so accepted by her, on or before the 23d day of November 1837, then the recognizance to be void; otherwise of force.

The plaintiff's demand was founded on the alleged breach of this condition. Samuel Herr died without issue, and without father or mother, brothers or sisters; Fanny Herr was his widow. Two of his uncles were living at his decease, and one aunt. Two other uncles had died before him, each leaving children. On the 14th April 1840, the defendants proceeded to pay the several legal representatives of Samuel Herr deceased, the sums of money supposed to be due to them respectively, dividing the one-half of the valuation of the purpart accepted by Fanny Herr into five shares or equal parts, one of which was paid to each uncle and aunt living at the decease of Samuel Herr, and to the children of each of his uncles who had died before him. Daniel Good, as the administrator of Emanuel Herr, who was one of the uncles living at the decease of Samuel Herr, received at this time from the defendants a sum which, with what Emanuel Herr had previously received in his lifetime, amounted to the one-fifth of the half of the valuation before mentioned, and executed, together with the rest, the remaining uncles, aunt, and the children of the two uncles deceased at the death of Samuel Herr, a release of the same date, by which he " did remise, release and for ever quit-claim *unto the* said Frances Herr, her heirs and assigns, all the estate, share, part, dividend, right, title, interest, claim and demand, of, in and to purpart No. 1, of which the said Samuel Herr died seised, accepted and confirmed to the said Frances Herr."

The law requiring that in default of children, brothers and sisters, and father or mother of an intestate, his real and personal estate shall descend to and be distributed among his next of kin, and that there shall be no representation admitted amongst collaterals, after brothers' and sisters' children, the plaintiff insisted that, according to law, the distribution of the 14th of April 1840 ought to have been among the two uncles and aunt of Samuel Herr living at the time of his decease, and among those only, they being his next of kin; the children of the uncles of the said Samuel Herr, who died before him, not being allowed by law to assume their degree of kindred, and take in their place what they

[Good v. Herr.]

would have been entitled to take if living. But the defendants pleaded payment with leave to give the special matters in evidence, and also the release of the 14th of April 1840. The plaintiff answered these pleas, replying to the latter specially that the release was obtained by misrepresentation, misconception and mistake; to which the defendants rejoined that the release was not obtained by fraud, misrepresentation, misconception, or mistake.

There was no mistake with respect to any fact in the case. The whole sum due from the defendants was ascertained; the persons claiming, their relationship to the deceased as uncles and aunt living when he died, and children of two uncles deceased before; all the proceedings of the Orphans' Court, and every fact that entered into the consideration of the parties at the arrangement among the heirs and distributees on the 14th of April 1840, when the release was executed, were known and undisputed. It did not appear that in regard to any of these facts there had been at any time any dispute, misrepresentation, misconception or mistake. The mistake was in conceiving the law to be that the children of uncles deceased, at the death of an intestate dying without issue, brother, sister, father or mother, were entitled to represent their fathers, and come in, as such representatives, along with other uncles living at the decease of the intestate, and claim his estate, along with them, as next of kin.

HAYES (President), in answer to several points put by the counsel of the respective parties, instructed the jury that the case presented no dispute about matter of fact, but that the parties having acted under a mistake of the law, equity would not interfere for the relief of the plaintiff, and directed a verdict for the defendant.

*Parke* and *Jenkins,* for plaintiff in error, cited 2 *Pow. on Con.* 122–3, 196; 1 *Story Eq.* 135, sec. 122, *note* 3, sec. 129; 3 *Serg. & Rawle* 331; 1 *Mad. Chan.* 63; 3 *Watts* 36; 5 *Whart.* 331; 4 *Rawle* 144; 1 *Story Eq.* 171, sec. 155; 3 *Watts & Serg.* 265; 23 *Law Lib.* 177; *Smith's L. C.* 233; 3 *Watts & Serg.* 546; 5 *Bac. Ab.* 680–710; 6 *Serg. & Rawle* 369; 2 *Burr.* 1005.

*Stevens* and *Montgomery,* for defendants in error, cited 1 *Story Eq.* 157; *Smith's L. C.* 270–3; 12 *Peters* 55; 1 *Wend.* 355; 9 *Cowen* 684; 6 *Watts* 48.

The opinion of the Court was delivered by

ROGERS, J.—The release executed by Emanuel Herr is a good defence to the action at law; but this case comes before us under our peculiar system of administering equity, in the nature of an application for relief, as in a bill in chancery. The evidence discloses a case where there was neither fraud, misrepresentation,

nor surprise; but a mutual mistake, or misconception of law, by both parties. It does not appear that there has been any dispute, misrepresentation, misapprehension or mistake in regard to any fact; for at the time of the execution of the release, and before, everything relating to the transaction, and which entered into the consideration of the parties, was fully known and undisputed. The mistake was in the supposition that children of uncles, deceased at the death of an intestate dying without issue, brother, sister, father or mother, were entitled to a distributive share of the estate of the intestate. It was therefore a naked mistake of a principle of law, and the sole question is, whether, under such circumstances, the defendant is entitled to relief in equity from his agreement or contract.

It is an elementary principle that ignorance of the law furnishes no excuse to any person, either civilly or criminally; and, consequently, a mistake in law cannot be relieved against, either in equity or at law. This doctrine is ably discussed by Mr Justice Story in his first volume of Commentaries on Equity Jurisprudence, page 121. All the cases are there reviewed, and those which have been supposed to be exceptions to the general rule are placed on their true ground. The principle is also discussed in *Hunt* v. *Rousmanier*, (8 *Wheat.* 211, 214–15), and in *The Bank of the United States* v. *Daniel*, (12 *Peters* 32, 35, 56). In *Hunt* v. *Rousmanier*, the court explicitly affirmed the general principle that a court of chancery cannot relieve a party from a mistake of law, but without undertaking to say that there may not be such a plain and acknowledged mistake at law as to bring it within the reach of a court of equity. In the latter case, the court say:— "Vexed as this question formerly was, and delicate as it now is, from the confusion in which numerous and conflicting decisions have involved it, no discussion of cases can be gone into without hazarding the introduction of exceptions that will be likely to sap the direct principle we intend to apply." Indeed, the remedial power claimed by courts of chancery to relieve against mistakes at law, is a doctrine rather grounded on exceptions than upon established rules. To this course of adjudication we are unwilling to yield. That mere mistakes at law are not remediable, is well established, as was declared by the court in *Hunt* v. *Rousmanier*, (1 *Peters* 15); and we can only repeat what was there said, that, whatever exceptions there may be to the rule, they will be found few in number, and to have something peculiar in their character, and to involve other elements of decision. The principle is, that a mistake or ignorance of the law forms no ground of relief from contracts fairly entered into, with a full knowledge of the facts, and under circumstances repelling all presumption of fraud, imposition, or undue advantage. Mr Justice Story, in his Commentaries, after reviewing in a clear and lucid manner the principal cases which are supposed to contain contradictions of, or

[Good v. Herr.]

exceptions to the general rule, further adds: "Without undertaking to assert that there are none of these cases which are inconsistent with the rule, (and in my opinion a great deal of useless learning has been thrown away in attempting to reconcile them to the rule), it may be affirmed that the real exceptions to it are very few, and generally stand upon some very urgent pressure of circumstances. The rule prevails, in England, of compromise in all cases of doubtful, and perhaps in all cases of doubted right, and especially in all cases of family arrangements. It is relaxed in cases where there is a total ignorance of title, founded in the mistake of a plain and settled principle of law, and in cases of imposition, misrepresentation, undue influence, misplaced confidence and surprise. In America, the general rule has been recognised as founded on sound wisdom and policy, and fit to be upheld with a steady confidence. And, hitherto, the exceptions (*if any*) will be found not to rest upon the mere foundation of a naked mistake of law, however plain and settled the principle may be, nor upon mere ignorance of title founded upon such mistake. In England, therefore, where there is a total ignorance of title founded on the mistake of a plain and settled principle of law, equity will in some cases grant relief; as, for example, where there is a plain and established doctrine on the subject, so generally known and of such constant occurrence as to be understood by the community at large as a rule of property; such, for instance, as the canons of descent; where a mistake or ignorance of the law in that country may give rise to a presumption that there has been undue influence, imposition, mental imbecility, surprise, or confidence abused. To this head may be referred cases of heirship, where the party acts upon the misapprehension that he has no title at all in the property, which seems, as is supposed, to involve in some measure a mistake of fact—that is, the fact of ownership—arising from a mistake of law; a distinction not easily understood. But in England, where the facts are known, the mistake of the title of heirship is treated as a mistake of law, and, consequently, upon general principles, cannot be the subject of relief in equity. But in this country other notions have been entertained, for here no difference is perceived whether it be the case of a mistake of heirship, or any other mistake; whether it be a plain and familiar principle of law, or one in which the case is not well established and settled." In this case it was a mutual mistake of a principle of law, without any other ingredient whatever. There was neither misapprehension of facts nor surprise, nor had one party any better means of knowledge than the other, nor was there any matter in the case which can induce the slightest suspicion of undue influence, improper practices, or superior information, or the means of obtaining it. Both parties were in every respect on precisely the same footing. There are, indeed, several circumstances in the case which would

VII. — 33                                        w *

[Good v. Herr.]

make it inequitable to relieve the defendant as against the plaintiff; but we do not put the case on that ground, but upon the broad principle that where there is a mutual mistake of law, without more, it is not the subject of equitable relief.    In such a case, we think it of no consequence whether it be a plain and familiar principle, or the reverse; whether it be a case of heirship, or any other misapprehension of law.    We fully agree with Mr Justice Story, that the distinction between cases of mistake of a plain and settled principle of law, and cases of mistake of a principle of law not plain to persons generally, but what is yet constructively certain as a foundation of title, is not of itself very intelligible, or, practically speaking, very easy of application, considered as an independent element of decision.    In contemplation of law, all its rules and principles are deemed certain, although they have not as yet been recognised by public adjudication.    The learned commentator pertinently asks, "What are to be deemed plain and settled principles?    Any thing such as have been long and uniformly established by adjudications only?    Or is a single decision sufficient?    What degree of clearness constitutes the line of demarcation?    If there have been decisions in different ways at different times, which is to prevail?    If a majority of the profession hold one doctrine, and a minority another, is the rule to be deemed doubtful, or is it to be deemed certain?"    Is it, we may add, confined to a mistake of a principle of common law, or is it extended to a mistake in the construction of a statute, and particularly the construction of the ever-varying statute of distribution of the estates of intestates?    Take the case in hand: would this be such a mistake of a plain and familiar canon of descent as, *per se*, to afford ground for the equitable interposition of the court?    We grant that, where there is a mistake of a clear, well-established and well-known principle of law, whether common or statute law, (for in this respect we can conceive no difference), equity will lay hold of slight circumstances to raise a presumption that there has been some undue influence, imposition, mental imbecility, surprise, or confidence abused.    But it is obvious that, in such cases, the mistake of itself is not the foundation of relief, but the relief is had on entirely independent grounds, so as not to impinge the general rule.    We therefore are of the opinion that in no case is ignorance or mistake of the law, with a full knowledge of the facts; *per se*, a ground for equitable relief.

Judgment affirmed.