## GWYNN AND WIFE vs. HAMILTON'S ADM'R.

[BILL IN EQUITY BY DISTRIBUTEE AGAINST ADMINISTRATOR FOR ACCOUNT AND SET-TLEMENT OF ADMINISTRATION.]

1. *Mutuality of estoppel.*—Estoppels must be mutual; and therefore a person who is not himself bound by a judgment, cannot set it up against another.

2. *Judgment res inter alios no estoppel.*—A judgment recovered by the husband, as administrator of his wife, is, as to the distributees of the estate, *res inter alios acta*, and therefore no estoppel.

3. *Judicial admission.*—The institution of a suit by the husband, in the name of himself and wife, for the recovery of slaves, is evidence against him, in a subsequent controversy between him and the distributees of his wife, as an admission against his interest; but it cannot operate as an estoppel, unless it has been acted on by the party who alleges it.

4. *Husband's marital rights.*—The marital rights of the husband attach to slaves, belonging to his wife, which are in the possession of a bailee at the time of the marriage.

5. *What is mistake of law.*—If the husband, under the erroneous supposition that his marital rights had not attached to certain slaves belonging to his wife, delivers them to the distributees of her estate, this is a pure mistake of law.

6. *Relief in equity against mistake or ignorance of law.*—It is well settled, in this State, that equity will not relieve against a pure mistake of law, where there is no fraud, imposition, undue influence, imbecility of mind, or the like, inferrible from the transaction; and that there is no distinction, in this respect, between mistake and ignorance of law.

APPEAL from the Chancery Court of Monroe.

Heard before the Hon. WADE KEYES.

LINDA DEAN, who was the daughter of John Dean, inter-married with William R. Hamilton in 1823, being at the time the owner of a negro woman named Hannah, who then had two children, and who was in the possession of said John Dean. On the death of said Dean, intestate, prior to 1837, letters of administration on his estate were granted to John Dean, jr., and Robert Lee. Mrs. Hamilton died, intestate, in 1837, before the final settlement of the estate of her father, leaving as her heirs-at-law her two children, Rebecca, who afterwards married Warren B. Gwynn, and Charles D. Hamilton; and letters of administration on her estate were granted, in January, 1838, to her surviving husband, William R.

16

Hamilton. Soon afterwards, said Hamilton, as administrator of his deceased wife, instituted two actions at law, one against said John Dean, jr., and the other against said Robert Lee, for the recovery of several negroes, together with damages for their detention; and recovered judgments, in 1842 and 1843, for the slaves, with damages; which judgments were fully satisfied, by the delivery of the slaves, and the payment of the damages. On the final settlement of the estate of John Dean, sr., in 1842, Mrs. Hamilton's distributive share, amounting to over $2,000, was decreed to her said husband, as her administrator, and was received by him under the decree. In the latter part of the year 1842, said Hamilton, as administrator of his said wife, delivered to each of her children several of the slaves which he had recovered in the actions at law, and which were delivered to them as a part of their distributive shares of the estate.

In November, 1852, Gwynn and wife filed their bill in equity against Hamilton, for an account and settlement of his administration on the estate of his said wife. Hamilton answered the bill, and set up several defenses which it is unnecessary to notice. He denied that his wife was possessed of any separate estate at the time of her death, or that she left any choses in action, except her distributive share of her father's estate. In reference to the negroes, Hannah and her children, he alleged that they belonged to his wife at the time of her marriage with him, under a gift from her grandfather, and were in the possession of her father as her natural guardian and bailee; that her father admitted her title to him, and afterwards held them as his bailee; that his marital rights thereby attached to the slaves; and that the subsequent suits, in the name of himself as administrator of his wife, were so instituted by the advice of counsel. His delivery of the slaves to Mrs. Gwynn and her brother, he alleges, was in ignorance of his own rights, and on the express understanding that they were received in full satisfaction of all claims against him arising out of his wife's estate.

On the part of the defendant, it was proved that, under the advice of counsel, he instituted a suit against his father-in-law, in the names of himself and wife, for the recovery of the slaves Hannah and her children; that Mrs. Hamilton and

her father both died pending this suit, and it was then suffered to abate; and that the subsequent suits against Lee and Dean were instituted, under the advice of counsel, to recover the same slaves.

The chancellor sustained the bill, and ordered a reference to the register of the matters of account; holding, that the defendant was chargeable with the money which he had received as his wife's distributive share of her father's estate; that the slaves Hannah and her children were not assets of the estate, but belonged to the defendant *jure mariti*; that his institution of the suits for their recovery did not estop him from asserting his title, but was, at most, an admission against interest; and that the complainants, having received a portion of these slaves in discharge of the defendant's liability as administrator, must be charged with their value at the time of the delivery.

The complainants appeal from this decree.

WATTS, JUDGE & JACKSON, with whom was F. S. BLOUNT, for the appellants.—Hannah and her children belonged to the estate of Mrs. Hamilton. Whatever rights Hamilton may have had, he sued for, and recovered them, as administrator of his wife; thereby admitting that he had no title to them, and that they belonged to his wife. This is a conclusive estoppel against him and his representatives.—1 Greenl. Ev. §§ 27, 627 *a*, and authorities there cited. The hire and damages recovered in those actions, must be governed by the decision as to the right to the slaves. The slaves delivered by Hamilton to the complainants, were delivered and received as a part of Mrs. Gwynn's distributive share of her mother's estate; and they cannot be allowed as a credit to the defendant, in accounting for the money received by him as Mrs. Hamilton's distributive share of her father's estate.

N. W. COCKE, *contra.*—1. The value of the slaves may be allowed to the defendant, under the answer merely, against the complainants' demands. If money had been distributed, on a partial settlement, under the supposition that it belonged to the estate, when in fact it did not, equity would allow it against the distributees, on final settlement, in dimnuition of

their claims, without a cross bill; and there can be no material distinction between that case and this.—Montgomery v. Givhan, 24 Ala. 568; Craig v. McGehee, 16 Ala. 41; Breckenridge v. Floyd, 7 Dana, 456.

2. That the mistake was one of law, and not of fact, does not affect the right to the allowance.—American Jurist, vol. 5, 146, 371; 4 Dana, 314; 3 B. Monroe, 510; 4 *ib.* 190; 19 Conn. 548; 7 Geo. 64; 2 Bailey, 623; 2 McCord's Ch. 455; 1 Hill's Ch. 251; 6 Har. and John. 500; 11 Ohio, 223, 480; 8 Wheaton, 215; 1 Edw. 467; 2 Barb. Ch. 505. The supreme court of Alabama has recognized this principle in several cases.—Craig v. McGehee, 16 Ala. 41; Betts v. Betts, 18 Ala. 787; Larkins v. Biddle, 21 Ala. 252; Stone v. Hale, 17 Ala. 557. Where the draughtsman, from ignorance or mistake of what the law is, fails to use words of such legal import as will effectuate the intention of the parties, and the instrument is executed by them under the belief that he has used proper words, it is idle to say that this is a mistake of fact, and not of law. The mistake is in the legal effect of the language used; and the mistake in the case at bar is of the same character.

WALKER, J.—Estoppels by judgment operate mutually, and a party not bound by a judgment can not claim that another is estopped by it.—Bentley v. Cleveland, 22 Ala. 821; Edmondson v. Montague, 14 Ala. 371; Co. Lit. 352 *a*; 4 Bacon's Abridgment, 190; Ross v. Cobb, 9 Yerger, 463–470.

The distributees of the estate of Linda Hamilton could not be estopped by any judgment in the case of Hamilton, as administrator of that estate, against Dean and Lee, because such judgment would be, as to them, *res inter alios acta.*—Neil v. McCombs, 2 Yerger, 10; Osgood v. The Manhattan Co., 3 Cowen, 622; Deneal v. Archer and Stump, 8 Peters, 528; Mason's Devisees v. Peters, 1 Munford, 437.

As the complainants in this suit could not themselves be estopped by the judicial proceedings above named, they cannot plead them as estoppels against the administrator who instituted them. The fact that Hamilton commenced suits, in the name of himself and wife, for the recovery of the slaves,

which suits were permitted to abate, is available in evidence, as an admission of Hamilton against his interest; but, like other admissions, does not operate as an estoppel, unless they have been acted on by him who sets up the estoppel. McCravy v. Remson, 19 Ala. 430; Duncan & Hooper v. Stewart, 25 Ala. 408.

It follows from what is above said, that the chancellor did not err in declining to charge the administrator of Linda Hamilton's estate with the negroes recovered from Lee and Dean, and their hire, if the proof shows clearly that the negroes belonged to William R. Hamilton, and not to the estate of his intestate. The negroes did belong to the estate of Linda Hamilton, unless the marital rights of Wm. R. Hamilton attached to them after his intermarriage with her, and before her death. This branch of the case, therefore, depends upon the question, whether William R. Hamilton's rights, by virtue of his marriage to Linda Hamilton, attached to the negroes. We concur with the chancellor in the conclusion, that the proof establishes that, at the time of the marriage of William R. Hamilton to Linda Dean, the slaves Hannah and her children were the property of the said Linda, and were in the possession of her father as her bailee; and the possession of the bailee being deemed the possession of the bailor, the title to the property vested in William R. Hamilton, *jure mariti.*—Magee v. Toland, 8 Porter, 37.

The bill states that the complainants have received from the estate of Linda Hamilton the slaves Hannah, Henry, Lydia and Elick; and that Charles D. Hamilton has received the slaves Howard, Jim and Clay. The answer of Wm. R. Hamilton admits the delivery of those negroes, as a part of the assets of the estate of Linda Hamilton, but avers that the negroes were so delivered through an ignorance and mistake of the rights which accrued to him by his intermarriage with Linda Hamilton. It is clearly deducible from the answer, that the mistake was one of law, and not of fact. The chancellor charged the complainants with the value at the time of delivery of the negroes received by them, and charged Wm. R. Hamilton with the funds decreed to him, as the representative of Linda Hamilton's estate, on the final settlement of Dean's estate. With the funds last mentioned,

which were received under a decree on the final settlement of
Dean's estate, Wm. R. Hamilton was certainly chargeable;
but the allowance to him of the value of the slaves voluntarily
delivered to the distributees of Linda Hamilton's estate, was,
in our judgment, erroneous.   These slaves were not received
by the distributees as a payment on their respective shares of
the money which might be for distribution, but as constituting
a part of the estate, and liable to division among them, as
their own property, under the statute of distributions.   It
can not be known, and we are not authorized to conjecture,
that the negroes would have been received in payment of the
pecuniary demand, against which the decree of the chancellor
balanced it; and to credit the value of those slaves on the
money part of the claim against the administrator would
convert the reception of them by the distributees, as their
own property, into an involuntary purchase.

It is argued in support of the chancellor's decree, in this
respect, that because Wm. R. Hamilton delivered the slaves
through mistake of law, he has a just claim to have back them,
or their value; and that this claim may be set off against his
liability to the distributees.  A conclusive reply to that
argument is, that the mistake is one merely of law; and that
we can not in this State, without overturning all our prece-
dents, hold that equity can relieve against a mistake of law,
where there is no element of fraud, imposition, undue influ-
ence, imbecility of mind, or the like, inferrible from the
transaction.—Jones v. Watkins, 1 Stew. 81 ; University v.
Keller, 1 Ala. 406; Juzan v. Toulman, 9 Ala. 694; Haden v.
Ware, 15 Ala. 149; Dill v. Shahan, 25 Ala. 702 ; Stone v.
Hale, 17 Ala. 557; Larkins v. Biddle, 21 Ala. 252; Erwin v.
Hamner, 27 Ala. 297.

We do not pause to comment upon these decisions ; but an
examination of them will prove that this court, from an early
day in the history of our jurisprudence, has uniformly main-
tained the proposition above laid down.   It has been
persistingly contested both in England and in America; and
there are some decisions opposed to it.   A distinction has
been taken in South Carolina, Georgia, Kentucky, and Mary-
land, between mistakes of law, and ignorance of law; and
there are some English decisions which have been regarded

by some as supporting the distinction. The cases will be found upon the brief of counsel, or referred to in the authorities cited upon the brief. But this distinction has been generally repudiated, as resting upon a mere imaginary difference, or as too subtle and refined for practical application. The great weight of authority, both in England and America, maintains the rule which we have laid down above. That rule is, as we conceive, founded in a wise and salutary public policy; and the best interests of society demand the stern observance of it, subject to any qualifications and exceptions which reason and authority may have engrafted upon it, without bending to the hardships, real or imaginary, of particular cases. While we regard the question as one too well settled in this State to be opened anew, our reflections and examination of authorities have convinced us, that the position heretofore taken by this court is founded in true policy, and sustained by the weight of authority. In the books referred to below, the question will be found fully discussed, both upon authority and principle.—Willard's Equity Jurisprudence, ch. 1, § 2; 1 Story's Equity Jurisprudence, ch. 5; Champlin v. Laytin, 18 Wendell, 407; Shotwell v. Murray, 1 Johns. Ch. 316; Lynn v. Buchanan, 2 Johns. Ch. 51; Gilbert v. Gilbert, 9 Barb. 532; Havens v. Foster, 9 Pick. 112; Waterman v. Snyder, 2 Green's (New Jersey) Ch. 489; Good v. Herr, 7 Watts & Serg. 253; Bank v. Daniel, 12 Peters, 32; Bell v. Stee, 2 Humph. 148; Trigg v. Reed, 5 Humph. 529; Broadwell v. Broadwell, 1 Gilm. 529; C. & H.'s Notes to Phillipps on Ev., 1483.

The decisions which maintain the jurisdiction of the chancery courts to reform an instrument which, on account of the mistake of the draughtsman, fails to speak the true intention of the parties, are not adverse to our conclusion. Those decisions are placed on the ground, that such mistakes are rather of fact, than of law.—Larkins v. Biddle, *supra*.

We do not intend to say that there are not exceptions to the general rule. It is said in Bank of the United States v. Daniel, *supra*, that whatever exceptions there may be to the rule, they will be found few in number, and to have something peculiar in their character, and involve other elements of decision. This case has no features entitling it to an exemp-

tion from the general rule. That the party in this case has acted in ignorance of title, does not make his mistake one of fact. Mistake of law in reference to one's title is not the ground of relief, unless there is, in the language of Judge Story, "an admixture of other ingredients, going to establish misrepresentation, imposition, undue confidence, undue influence, or that sort of surprise which equity uniformly regards as a just foundation for relief."—1 Story's Eq. Jur. 134, § 120 .

The chancellor erred in directing the register to charge the complainant with the value of the slaves received from Wm. R. Hamilton; and for this error, the decree is reversed, and the cause remanded. Let the costs of the appeal be paid by the appellants.