# Rankin *against* Mortimere.

Ignorance of the law does not affect contracts, nor excuse a party from the legal consequences of particular acts.

That which was a mortgage at its execution continues to be so, although it contains a clause that it shall be an absolute deed of conveyance if the money which it secures be not paid at the day.

ERROR to the common pleas of *Mercer* county.

William S. Rankin against John Mortimere and John Rodgers.

This ejectment was brought by the plaintiff to recover the possession of three hundred and ninety-three acres of land.

The plaintiff claims the land in dispute by a deed of conveyance from John Mortimere to him, dated the 1st of July 1833. The consideration expressed in the deed is 260 dollars. In October 1831, John Mortimere the defendant, to secure the payment of 260 dollars, conveyed this tract of land to the plaintiff. The deed contained a clause as follows: "provided that if the said John Mortimere refunds to said Rankin the consideration money aforesaid with lawful interest thereon in one year from this date, then this deed to be void and of no effect, and this not to be considered in the nature of a mortgage, but an express stipulation to pay on the particular day and if not

[Rankin v. Mortimere.]

then paid, the estate and title shall be absolute without any further deed, transfer, or proceeding whatever." 240 dollars 34 cents of the 260 dollars were paid by Mr Rankin on a judgment in the common pleas of Mercer county, John Leech *v.* John Mortimere, and this judgment some time after the payment of the money was assigned by John Leech to William S. Rankin. On the 19th of October 1832 John Mortimere paid to William S. Rankin 15 dollars 55 cents, the interest on the judgment up to that time. The plaintiff gave in evidence a deed from John Mortimere to William S. Rankin, dated the 24th of December 1831 for two hundred acres of land on which Mr Stephenson resided : the consideration expressed in the deed is 45 dollars. John and Robert Mortimere, and John Stephenson and Jane his wife relative of John Mortimere, claimed an interest in the tract of land in dispute ; and in July 1833, after the date of the deed under which the plaintiff claims this land, he represented to John and Robert Mortimere that he was acting for John Mortimere and endeavouring to effect a compromise with them ; he was making peace amongst them and preventing them and John Mortimere from spending it at law. The plaintiff effected a compromise, and conveyed to John Stephenson and wife one hundred and fifty acres of the Stephenson tract, and to John and Robert Mortimere fifty acres of the same tract, and also a tract of donation land that plaintiff had purchased from Mrs Law, whose former husband had purchased it at commissioners' sale ; and it is admitted that Mr Rankin paid Mrs Law in November 1835 for this tract 425 dollars ; and it was also in evidence that the counsel who attended to the action of partition and to the compromise charged 100 dollars, of which 68 dollars were paid. The witnesses examined for the purpose of proving the value of the tract of land in dispute in 1831 and in 1833, all agreed in fixing the value at 9 and 10 dollars per acre. And it was admitted that 1105 dollars were tendered by John Mortimere to William S. Rankin before suit was brought, and this sum was brought into court and paid into the hands of the prothonotary.

The only question argued and determined in this court arose upon the instruction of the court below to the jury ; in substance, that if the defendant was ignorant of the legal effect of the deed of October 1831 from him to the plaintiff, he would not be bound by the deed of July 1833, and might recover.

*Pearson*, for plaintiff in error.
*Sullivan* and *Holstein*, contra.

The opinion of the Court was delivered by

Rogers, J.—The error on which the party mainly relies is contained in the answer to the first point of the defendant. The court were requested to charge the jury, that if they believe the deed given in evidence by the plaintiff, for the land in dispute, was given by the defendant under a misapprehension of the law as to the effect of the

[Rankin v. Mortimere.]

mortgage, believing that the prior mortgage deed gave an indefeasible title, the plaintiff was not entitled to recover. This point the court answered in the affirmative; and, as I understand, in substance ruled, that the mistake of the law by one of the parties, though in other respects the deed was fairly executed, entitled the defendant to relief in a court of equity. If this be the true construction of the answer, and I can give no other, the court were clearly in error. It is an unquestionable principle, which applies to civil as well as criminal cases, that ignorance of law will not furnish an excuse for any person, either for a breach or omission of duty. *Ignorantia legis neminem excusat* is a maxim which is as much respected in equity as in law. This doctrine is among the settled elements of the law; for every man, at his peril, is bound to take notice of what the law is, as well the law made by statute as the common law. *Doctor and Student, dial. 2, ch.* 46. The presumption is, that every man is acquainted with his own rights, provided he has a reasonable opportunity to know them. And nothing can be more liable to abuse than to permit a person to reclaim his property upon the mere pretence that at the time of parting with it he was ignorant of the law acting on his title. Storrs *v.* Baker, 6 *Johns. Ch. Rep.* 169. In *Fonblanque*, it is laid down as a general proposition, that ignorance of the law shall not affect agreements, nor excuse from the legal consequences of particular acts in courts of equity; and Chancellor Kent, in Lyon. *v.* Richmond, 2 *Johns. Ch. Rep.* 60, says, the court (speaking of the court of chancery) do not undertake to relieve parties from their acts and deeds, fairly done, though under a mistake of the law. Every man is to be charged, at his peril, with a knowledge of the law. There is no other principle which is safe and practicable, in the common intercourse of mankind. In Storrs *v.* Baker, the same chancellor also says, it is rarely that a mistake in point of law, with a full knowledge of all the facts, can afford ground for relief, or be considered as a sufficient indemnity against the injurious consequences of deception practised on mankind. It would therefore seem to be a wise principle of policy, that ignorance of the law, with a knowledge of the facts, cannot generally be set up as a defence. It would be an affectation of legal research, to cite all the cases in which this doctrine has been recognized. It may be sufficient to observe, that the principle is supported by all the authorities, ancient and modern, with the solitary exception of Lansdown *v.* Lansdown, *Mosely's Rep.* 264, 2 *Jac. & Walk.* 205, where lord King is reported to have said, that the maxim of law, *ignorantia juris non excusat*, was in regard to the public; that ignorance cannot be pleaded in excuse of crimes, but it did not hold in civil cases. But in this position he is clearly mistaken. To this maxim there are some exceptions, which do not touch the case, in the point of view it is now presented. As when there has been a mutual mistake, or when in addition to the mistake of law there are circumstances which tend to show misrepresentation under confidence, mental imbecility, undue influence, or any kind of

[Rankin v. Mortimere.]

fraud or species of imposition. In all such cases, a court of equity will grant relief. So ignorance of the law may be one of the ingredients of fraud on which the court will act; for when there is gross ignorance, or a plain and palpable mistake, of a plain and familiar principle of law, it may well give rise to a presumption, with admixture of other and even slight circumstances, that there has been undue influence, imposition, mental imbecility, surprize, or that the confidence of the party has been abused. 1 *Story's Eq.* 121.

It is with regret that we feel ourselves bound to reverse the judgment, and to remand the record for another trial, as we conceive that in other respects the charge is correct. The original deed was a mortgage deed to secure the loan of money, and it continued a mortgage, notwithstanding the stipulation that if the money was not paid at a particular time it was not to be considered a mortgage. Once a mortgage, and always a mortgage, is an elementary principle, which does not need the aid of authorities; and a stipulation like this, which is *prima facie* oppressive, cannot convert a mortgage into an absolute deed. It is also very clear on authority, that the parol testimony was properly admitted to explain the intention of the parties in executing the last deed. We regret the decision on this point, because, if the witnesses are believed, it is the case of a flagrant abuse of confidence and which is a clear ground of equitable relief.

Judgment reversed, and a *venire de novo* awarded.