# Gross *et al. versus* Leber.

*Estate, when relieved against in equity.*

1. Equity will relieve against a mistake of fact, superinduced by mistake of law: though not where the mistake is of law only.

2. Where a feme sole, as guardian, had trust funds in possession, and afterwards conveyed her real estate to a trustee to manage for her use and benefit, paying over to her the net proceeds, who after accepting the conveyance died, and his sons, the administrators, in mistake of their duty as such, executed their bond to the ward for the amount due him by his guardian, their mistake in the execution of the bond is relievable against in equity.

3. Therefore, in an action on the bond, it was competent for the defendants to prove under the pleas of payment with leave, &c., that at the time of the execution of the bond they were not trustees: that it was given by mistake, without the knowledge, consent, or presence of the guardian, and without consideration, and that there was nothing due by them to her on their individual account.

ERROR to the Common Pleas of *Lancaster county.*

This was an action of debt on a bond by Jacob Leber, for the use of George Weidler's executors, against John W. Gross, Martin Gross, and Jacob L. Gross, trustees of Ann Albright.

The bond of defendants, dated April 25th 1848, was in the penal sum of $1000, conditioned for the payment of $493.36, on

[Gross et al. v. Leber.]

the 1st day of April 1849, with interest from date. On the 2d of April 1849, it was assigned to George Weidler, who died since suit brought; whereupon it was marked to the use of his executors.

On the trial the plaintiffs proved the execution and transfer of the bond, offered the bond and assignment in evidence, and closed their case.

The defendants then under the plea of payment, and payment with leave, &c., admitted that John Gross died on the 18th of July 1847, that he was the father of the obligors in the bond given in evidence, and that letters of administration were granted to defendants 24th of August 1847.

That in 1844, Ann Leber (since Albright) executed a deed of trust to John Gross aforesaid, but these parties, John W. Gross, Martin Gross, and Jacob L. Gross, never were trustees, and offered :—

"Deed of trust executed by Ann Albright on the 4th of December 1844, to John Gross and delivered to him, granting a certain tract of land therein mentioned to Ann Leber, now Ann Albright. Recorded in Record Book, Vol. 7, B, p. 505. The petition of Ann Albright, 26th January 1852, on which the court appointed John W. Gross, trustee in room of John Gross, deceased, of the said Ann Albright. At the same time the trust was accepted, and bond approved of John W. Gross for $8000;" which was offered to show that when this bond was executed the said J. W. Gross, Martin Gross, and Jacob L. Gross were not trustees of Ann Albright; that she was not present at the time, had no knowledge of the transaction and gave no consent to it; that this whole question was investigated by the auditor appointed by the court to make distribution of the proceeds of Ann Albright's estate, whose report was confirmed, as shown by the opinion of the court, August 15th 1862; which proceedings were also made part of this offer, and that Jacob G. Leber is the present trustee, having been appointed October 20th 1862. It was also proposed to show that "there was nothing due from the three defendants as individuals, or on their individual account, to the estate of Ann Leber or Albright, and that in executing the bond in suit, they acted under a mistake of their rights, supposing that because they were administrators of their father, John Gross, they were also trustees of Ann Albright." This whole offer was objected and overruled by the court; which was the error assigned here by the defendants, after a verdict and judgment in favour of plaintiffs.

J. B. Amwake and A. H. Smith, for plaintiffs in error.—The law is clearly settled that under the plea of payment and pay-

[Gross *et al. v.* Leber.]

ment with leave, anything may be given in evidence which shows that *exœque et bona* the plaintiff ought not to recover, or that it would be unconscientious in the plaintiff to demand : Latapee *v.* Pecholiar, 2 W. C. C. R. 181. The plea of payment and payment with leave, &c., is an equitable plea, and anything that would entitle a party to relief in equity can be given in evidence under this plea : Evans *v.* Evans, 1 Barr 68 ; Hawk *v.* Giddis, 16 S. & R. 28. In this case would not the defendants have been entitled to relief in equity, if the facts and circumstances, as offered to be proved in this case, had been set out in his bill ; for the bond being given by mistake, and misapprehension of their rights and powers, and without any consideration moving from either party, would it not be unconscionable and unjust to make the defendants pay this money without having received one cent's worth of consideration for it ? The defendants further offered to prove that the plaintiff presented the bond in question before the auditor appointed by the court to make distribution of the balance in the hands of John W. Gross, trustee of Ann Albright, to and among those entitled to same, that the auditor passed upon it, that testimony was received for and against the claim or bond, that the auditor in his report decided adverse to the plaintiff, and that exceptions were filed to the report by Messrs. Franklin and Ellmaker, attorneys for Weidler ; that the exceptions were overruled, and the report confirmed by the decree of the court, and that the decree is unappealed from ; the whole record, with the auditor's report and the opinion of the court was offered in evidence, all of which offers the court overruled on the ground of irrelevancy, in which we think the court erred.

We offered all this testimony to show that the auditor and Court of Common Pleas of Lancaster county passed upon the same, and that the decree of court was in effect between the same parties, upon the same points, deciding the same subject-matter. We think this was perfectly legitimate evidence, and ought to have been received, to show that the merits of this controversy was passed upon by a court of exclusive jurisdiction, and ought to bar the plaintiff from recovering in this suit : Man *v.* Drexel, 2 Barr 202 ; 5 Id. 152 ; Carvill *v.* Garrigues, 11 S. & R. 188.

The plaintiff in this case—the way the pleadings stand—seeks to recover against the defendants, as trustees of Ann Albright, charging the trust funds with the judgment, hence the *cestui que trust* is interested in the issue ; for that purpose we offered evidence to show that at the time the bond was executed and delivered by the defendants, they were not trustees, and that Ann Albright was not present ; that she had no knowledge of the transaction, nor did at any subsequent time ratify the acts

[Gross *et al. v.* Leber.]

of the defendants. The verdict and judgment in the court below stand against John W. Gross, Martin Gross, and Jacob L. Gross, trustees of Ann Albright, and binds the trust funds in the hands of her present trustee, Jacob G. Leber. Now under this state of the case was it not perfectly relevant to produce testimony to show that the plaintiff's claim was passed upon, and judgment rendered against him by a court of competent jurisdiction, exempting the trust estate from the payment of the same. We think the learned judge below was in error when he ruled out our offer of testimony.

*Thomas E. Franklin, N. Ellmaker,* and *E. H. Yundt,* for defendant in error.—The testimony set forth in the bill of exceptions is in the nature of a bill in equity brought by defendants to relieve them from the legal effect of the obligation into which they had entered. The question then results : If the facts offered to be proved had been set forth in a bill filed by them to relieve them from their bond, would they be sufficient to induce the interposition of the court sitting in equity for that purpose ?

1. One element of the offer is that the defendants were not trustees of Ann Albright when they executed and delivered the bond in suit; and that in executing it they acted under a mistake of their rights, supposing that because they were administrators of their father, John Gross, they were also trustees of Ann Albright. Now in reference to this it is to be observed that no fraud is alleged to have been perpetrated or attempted upon the defendants by Jacob Leber at the time of, or as inducement to the execution of the bond by them ; nor that they were ignorant of the fact that they had not then been appointed by the court trustees in the room of their deceased father ; but only that they supposed that because they were administrators of their father, they were also trustees of Ann Albright, and acted under a mistake of their rights. But a mistake of their rights in that regard is a mistake of law ; and it is a well-established principle of equity that a mistake of the law shall not affect agreements, nor excuse from the legal consequences of particular acts. The whole subject of the jurisdiction of courts of equity, founded upon the ground of mistake, is fully considered and elaborately treated by Judge Story in his Equity Jurisprudence, ch. 5, *Mistake,* § 110 to 176. The distinction between mistakes of law and those of fact has been fully recognised in Pennsylvania: Good *v.* Herr, 7 W. & S. 253 ; Peters *v.* Florence, 2 Wright 194 ; Rankin *v.* Mortimer, 7 Watts 374 ; McAninch *v.* Laughlin, 1 Harris 375 ; Light *v.* Light, 9 Id. 407.

2. Another branch of the offer is, that Ann Albright was not present at the time, had no knowledge of the transaction, and gave no consent to it. Now whatever effect this fact might have

on any remedy of the defendants against Ann Albright or her estate, it is not perceived how it is to discharge the defendants from their obligation to the plaintiff, which they chose to enter into without consulting her.   Their mistake in not obtaining her assent, was not induced by any act of the plaintiff, and was a mistake as to the extent of their authority to bind her; still a mistake of the law without an ingredient of misapprehension of facts.

3. It was also proposed to be shown, that there was nothing due from the three defendants, as individuals or on their individual account, to the estate of Ann Albright.   But it is not perceived that that fact could give them any claim to relief from their bond to the plaintiff.   It is not alleged that they were led to suppose that they were indebted to her, nor that they were under any misapprehension on that point; nor can we imagine how their indebtedness to her could have any bearing upon the validity of the bond in controversy.

4. The remainder of the offer was to show that this whole question was investigated by the auditor appointed by the court to make distribution of the proceeds of Ann Albright's estate, whose report was confirmed, as shown by the opinion of the court, August 16th 1862, which proceedings were made part of the offer, and are spread at large on plaintiff in error's paper-book.   But these proceedings have no relation to the question in dispute between these parties.   Their object was to determine the distribution of the trust estate.   They are *res inter alios acta;* and the defendants were actually examined as witnesses therein; and it would be strange if they could now set them up to bar the plaintiffs' claim against themselves.   If they could be used for any purpose at all, they would most effectually show how utterly destitute the defendants' case is of a shadow of justice or equity to sustain their plea; for the object of the arrangement was to discharge McCormick, the surety of Ann Albright, on the bond given by her as guardian of her own son, Jacob Leber, the plaintiff.   Having effectuated this object, to relieve the defendants of the responsibility which they then assumed for that purpose, and leave the plaintiff remediless, would, it is submitted, be not equity but gross injustice.

The offer, taken as a whole amount, make out a stronger defence than is presented by its several parts.   It does not show fraud, mistake of facts, nor failure of consideration.   Throughout the whole of it, the defendants make no offer to prove what the consideration of the bond really was.   In order to succeed in a defence setting up a claim for relief from the payment of his obligation, a defendant must clearly show—first, what the consideration was; and secondly, that it has failed in whole or in part.   An entire absence of consideration, even if such were

alleged, would not avail the party in the absence of fraud or
mistake of facts.   A bond is an executed contract importing
consideration; and if a man voluntarily executes and delivers to
another his bond, conditioned for the payment of money, equity
will not relieve him from the payment on the ground of defect
of consideration : 2 Story's Eq., § 973 a.

In respect to voluntary contracts, *inter vivos*, it is a general
principle that courts of equity will not interfere, but will leave
the parties where the law finds them : 2 Story's Eq., § 706 a.

In Smith *v.* Smith, 5 Barr 254, the defendant's testator had
executed a voluntary bond to the plaintiff, but retained it in his
own possession without delivery during his lifetime.   By a codicil
to his will, he directed his executor to deliver it to the plaintiff.
The plaintiff was held entitled to recover in an action of debt on
the instrument as the bond of testator.

The opinion of the court was delivered, May 24th 1864, by

AGNEW, J.—The obscurity of the offer of evidence rejected by
the court below, which forms the only ground of error assigned,
makes it necessary to ascertain, whether the matters offered in
evidence raise the real question before the court.

Evidence consists not only of the facts proven, but also of all
the just inferences derivable from them.   In making an offer of
evidence, it is certainly not necessary to state all the legal con-
sequences which plainly flow from the facts offered to be proved;
a court will take notice of them.

I shall state the matters contained in the offer, without follow-
ing the order of it.   They are these: That Ann Albright, then
Ann Leber, in 1844, executed a deed to John Gross, for a tract
of land in trust for herself, "to manage and conduct (as we find
by referring to the deed offered) said estate to the best advantage,
for the benefit of said Ann Leber, and out of the yearly income
of said property, pay taxes, repairs, and other necessary ex-
penses, and the balance remaining to be paid over to her for her
sole and separate use; and further, in trust, that if in case the
said Ann Leber should marry and again become a widow, to re-
convey the aforesaid described premises to her, if requested by
her."

That John Gross died in 1847, and letters of administration
were granted to the defendants; but that they did not become
trustees in room of John Gross; and, that John W. Gross, the
trustee who succeeded John Gross, the deceased trustee, was not
appointed until 1852, after delivery of the bond.   That, at the
time of giving the bond, the defendants were not trustees of Ann
Albright, and she was not present, had no knowledge of the
transaction, and gave no consent to it: that, when the defendants
gave the bond, they were not themselves indebted to Ann Albright,

and that, in giving it, they acted under a mistake, in supposing they were trustees because they were administrators, when in fact they were not so. The deed which is a part of the offer contains no authority to the trustee, John Gross, to apply the avails of the trust to the payment of Ann Albright's debts, and a part of the offer is, that she was not privy to the bond and gave no consent. Now, from the evidence offered, it plainly appears that the defendants gave their bond for a debt, which their intestate did not owe, and was not authorized to pay; and they were not trustees in law or in fact; and were not authorized to pay Ann Albright's debt, and did not owe the debt themselves; and they aver that, in giving the bond, they did so in mistake of their rights.

This, therefore, is plainly the point raised by the offer, and the question is, whether equity will relieve against such a mistake.

Clearly it will. It is not a voluntary bond or a bond given for the benefit of another, intending it so to be; but one given in a double mistake of the duty to pay, and the authority to undertake as trustees. The mistake was not one of mere law, but of fact as well as law. It is precisely that kind of case referred to by Story in his Equity Jurisprudence, Vol. I., §§ 120, 130, which he says "seems to involve in some measure a mistake of fact arising from a mistake of law," and makes it an exception to the undeniable rule, that equity cannot relieve in cases of mere ignorance or mistake of law. That rule is the well-settled law of this state: Rankin *v.* Mortimere, 7 Watts 372; McAninch *v.* Laughlin, 1 Harris 371. But in the cases in which the doctrine prevails, that ignorance of the law will not avail as a defence; it has been where the party has acted upon misconception of some legal effect, which he supposed would follow, or some legal right which he supposed he had or had not. In each case he intended to act in his own personal and individual capacity, and the mistake was only collateral to the direct act. But here the parties acted in the capacity of trustees, for so the bond expressly states, and they bind themselves as such, and it is declared on as a bond of trustees. No duty lay on John Gross to pay Ann Albright's debt, and none lay upon them as his administrators. They were not trustees in fact, and were not in law. They wholly misconceived the attitude in which they were placed, and the character which they bore. It was a mistake of the facts of their position, arising, it is true, out of misconception of their legal relation. It resembles much in principle Heacock *v.* Fly, 2 Harris 540. There a conveyance was made for the use of a married woman, who executed alone the bond and mortgage for the purchase-money. The bond and mortgage being void, it was held, that equity would rescind the conveyance held in trust

[Gross *et al. v.* Leber.]

for her. It is very clear, that the conveyance was founded in a mistake of the law, as to the power of a married woman to bind herself by bond and mortgage, yet it led to a mistake of her capacity as of a *feme sole*, and caused a conveyance to be made, which otherwise would not have been. So, here, the defendants bound themselves as trustees. They intended to bind the trust and not themselves: they mistook their capacity.

It is true a designation appended to a promissor's name may be treated as a surplusage in pleading, and a recovery had against him. But that is not the point here; it is not that the instrument may not be declared on personally; but here the point is, a mistake in the concoction of it.

In 1 Parsons on Contracts 363, it is said: "the assumption of a supposed liability or danger which has no foundation in law or fact, is not a valuable or sufficient consideration: where one through mistake of law acknowledges himself under an obligation, which the law does not impose, he is not bound by such promise." The cases cited in support of this position, I find as follows: Cabot *v.* Haskins, 3 Pick. 83, was a case where the defendants, under a belief that the United States had a priority of claim on certain property they had assigned and wished to get back, in order to quiet the fears of the assignee, as to the claim of the United States, promised to pay him $1000 as an equivalent. It being held by the court, that the claim of the United States applied only to cases of bankruptcy and insolvency, the promise was decided to be founded on a mere ideal liability, and therefore not binding.

In Warder *v.* Tucker, 7 Mass. 449, an endorsee of a bill had no legal notice of protest, but promised payment. Held, that where one, through mistake of the law, acknowledges himself to be under an obligation, the law does not impose on him; his promise is without consideration, and not binding. To the same effect are Freeman *v.* Boynton, 7 Mass. 483, and May *v.* Coffin, 4 Id. 341.

While affirming the doctrine of Rankin *v.* Mortimer, 7 Watts 372, and McAninch *v.* Laughlin, 1 Harris 371, that a mistake in law is not a ground of relief, we think the offer does not fall within the principle as correctly understood, but that the mistake was of fact superinduced by mistake of law, as to the capacity and duty of the defendants as trustees, and is therefore relievable against.

The evidence ought to have been received, in order that the defendants might have had an opportunity of showing that the bond was given under a total misapprehension of their power and duty, without intending to create a personal obligation or voluntary assumption of the liability.

We have not referred to the auditor's report as part of the

[Gross *et al. v.* Leber.]

offer, for the manifest reason that the decision before him was not upon the matters litigated in this case. There the point was whether the bond was entitled to a share of the trust estate: here it is whether the bond is valid against the obligors as a personal liability.

> The judgment is reversed, and a *venire facias de novo* is awarded.

WOODWARD, C. J., was absent.
STRONG, J., dissented.