## Grubb v. Commonwealth

*Paul P. Wisler*, Special Deputy Attorney General, for exceptant.

*Raymond Pearlstine*, contra.

DANNEHOWER, J., February 11, 1943.—The exceptions to the report of the jury of view raise two questions:

1. Is a deed of release and quitclaim for damages for the appropriation of land for highway purposes in favor of the Commonwealth voidable by the landowner on the grounds of mutual mistake and misrepresentation, where the preëxisting right of way was represented to be 60 feet in width and there was no taking, when in fact it was only 50 feet in width and there was an appropriation of land with consequential damages?

2. If said deed of release and quitclaim is voidable, can its invalidity properly be asserted by the landowner in a proceeding before viewers to assess the damages to the property forming the subject matter of the instrument, in defense to a plea of release set up by the Commonwealth in bar of petitioner's claim for damages; or must the petitioner first seek relief in a court of equity by way of cancellation of said instrument?

On December 23, 1935, plans for the relocation and improvement of State Highway Route No. 146, otherwise known as the William Penn Highway, were duly filed in the office of the Secretary of Highways. These plans called for a 60-foot right of way through Limerick Township, Montgomery County, Pa.

In 1911 the Commonwealth, under the Sproul Act of May 31, 1911, P. L. 468, took over this highway from the County of Montgomery, which had previously appropriated it from the Perkiomen and Reading Turnpike Company. Representatives of the State Highways Department, believing that the old right of way was 60 feet in width, secured deeds of release and quit-

claim from various landowners without paying any money consideration, upon the representation that the preëxisting right of way was 60 feet in width, was not being widened by the present condemnation, and that there was no appropriation of their property. The plan and blueprint attached to each release and made part thereof showed a preëxisting right of way of 60 feet in width.

Thereafter, in 1939, in the land damage case of Greiner v. Commonwealth, tried in the Montgomery County courts, the main issue before the jury was the width of this highway. The jury found the old right of way to be 50 feet in width, and not 60 feet. The case was appealed to the Supreme Court, Greiner v. Commonwealth, 334 Pa. 299, where it was decided that certain testimony was relevant and admissible and that the evidence presented was sufficient to warrant the jury's finding.

Promptly after this decision the various landowners notified the Commonwealth that they rescinded the deeds of quitclaim and release on the grounds of misrepresentation and mutual mistake of a material fact.

Petitions for the appointment of juries of view for the assessment of damages were filed. At each hearing the Commonwealth set up the release in bar of the petitioner's claim for damages, and the jury of view, after hearing the evidence, decided in each case that each release was properly rescinded on the grounds of misrepresentation and mutual mistake, and was therefore invalid, and awarded damages. These exceptions followed.

The chief function of viewers in condemnation proceedings is to assess the damages sustained by the owner of property as a result of its being taken, injured, or destroyed. Their function is not to serve simply as a fact-finding body in the manner of a common-law jury, but it is their duty to pass upon and determine questions of law as well as matters of fact:

Germantown & Perkiomen Turnpike Road Company's Case, 4 Rawle 191. Viewers are made the sole judges, in the first instance, of the whole question, both as to law and facts, and must determine for themselves the amount of damages to be awarded. Thus the viewers' report may not state an award of damages in the alternative, depending upon which view of the law the court thinks proper. Where the facts are not in dispute, and are contained in the report, the court may rule on the exceptions taken.

In the present case all the facts are admitted. Since the Greiner decision, it is not disputed that the preexisting right of way was but 50 feet in width; that the Commonwealth condemned 10 additional feet for highway purposes and appropriated a portion of petitioner's land; that the Commonwealth's representative stated when the releases were executed that the preëxisting right of way was 60 feet in width, and there was no appropriation of petitioner's land, when in fact the old right of way was 50 feet in width and there was an appropriation; that the blueprint attached to each release showed the preëxisting right of way as being 60 feet in width; and that there was an innocent misrepresentation and a mutual mistake of a material fact, which constituted the efficient cause of executing the releases.

Our authorities have consistently observed the requirement of common justice and equity by holding that where a contract was made under a mistake, or in ignorance of a material fact, one which is the very essence of the contract, it is voidable: Miles v. Stevens, 3 Pa. 21 (1846).

Relief will be granted against a contract entered into under a mutual mistake of facts, which were the foundation of the contract, were of its essence, and constituted the efficient cause of entering into it: Neale v. Bingler, 25 Pa. C. C. 359. Even the negligent failure of a party to know or discover facts, as to

which both parties are under a mistake, does not preclude relief: Smith et al. v. Capital Bank & Trust Co. et al., 325 Pa. 369. These equitable principles apply to transactions between a private citizen and the Commonwealth: Stanley Iron & Steel Co. v. Lewis et al., 8 D. & C. 640. It cannot be seriously contended that the width of a turnpike is not a question of fact, under these circumstances.

Therefore, as the viewers found under the admitted facts, the deed of release and quitclaim, having been executed in reliance upon a misrepresentation and mutual mistake of a material fact, was voidable by the petitioner and, having been promptly rescinded and disaffirmed upon discovery, said release is wholly invalid and without legal effect and is not a bar to an award of damages.

The invalidity of the deed of release and quitclaim can properly be asserted in the present proceeding in defense to a plea of release set up by the Commonwealth in bar of the claim for damages, without first resorting to a court of equity for cancellation of the instrument.

The well-established rule is plainly stated in 53 C. J. 1230 (Release §48): "The modern authorities unanimously allow fraud or misrepresentation touching the execution of a release, whether sealed or unsealed, and its existence as a legal instrument, to be availed of as a defense to a plea of release in an action at law on the claim released, without recourse to equity for cancellation or rescission."

This has been the rule in Pennsylvania for many years: Gross et al. v. Leber, 47 Pa. 520.

And now, February 11, 1943, for the foregoing reasons, all the Commonwealth's exceptions to the report of the jury of view are hereby dismissed, and the report of the viewers awarding damages is hereby confirmed absolutely.