# McAninch and Wife *versus* Laughlin.

Where the facts, on which a contract under seal is founded, are mutually understood by the parties, or where they have an opportunity of knowing them, but a mistake was made as to the legal effect of them, relief will not be extended to the party complaining.

ERROR to the Common Pleas of *Huntingdon* county.

This was an action of Covenant by McAninch and Mary his wife, late Mary McKee, widow of James McKee, *vs.* Laughlin, on an article of agreement hereafter stated.

Plea, covenants performed, with leave to give the special matters in evidence, and also a special plea.

James McKee, of Dublin township, Huntingdon county, bequeathed to his wife Mary, the use and benefit of his whole land, until his youngest son Henry came of the age of twenty-one, " if she continues my widow, and also for the support of her and the children, and if she does not continue my widow, until the said Henry McKee comes to age, but marries another, I do ratify and allow her for her legacy, one horse and saddle, and one case of drawers, together with bed and bedding."

" And I further give and devise to my said eldest son, James McKee, and my youngest son Henry McKee, their heirs and assigns forever, all my leasehold estate of and all their messuages or tenements, with the appurtenances, situated in Dublin township, Huntingdon county, equally to be divided between them." He

devised to his children certain personal property, and if one of his sons should happen to die, without an heir, he devised his part to the other son—and the residue of his personal estate was to be appraised and sold, within six months after his decease, "for the good of my wife and family." He appointed his wife *one* of the executors of his will. Letters testamentary to the other executors, than the widow, issued in 1809.

It was proved that the widow was married to McAninch, in 1815, and continued so for more than 20 years.

James McKee, jr., died after his mother married McAninch.—He died in his minority—intestate and without issue. She remained on the land until it came into the hands of Laughlin, eight or nine years ago.

Laughlin purchased the land alluded to in the agreement hereafter referred to at sheriff's sale, when sold as the property of Henry McKee, the surviving son. Henry was younger than James.

On the part of the plaintiffs was offered articles of agreement, as follows:

Alexander McAninch, intermarried to Mary McKee, the widow and relict of James McKee, late of Dublin township, Huntingdon county, and State of Pennsylvania, deceased, *vs.* Wm. Laughlin.

Witnesseth, that whereas, there never was a writ of partition or valuation had or held on the real estate of the said James McKee, dec'd: And whereas, the aforesaid Wm. Laughlin, has, by a sheriff's deed, became the owner of the said real estate, *subject to the said Mary McKee's claim to the said real estate, by right of her deceased husband,* as above named: Now know all men by these presents, that we, Alexander McAninch, as above stated, and Wm. Laughlin, as above mentioned, have amicably agreed and appointed and chosen Samuel Finley, James Hudson and Robert Campbell, to go on the said premises, and to fix a valuation on the said real estate; and it is further agreed between the said parties, that the said valuation made and agreed upon by the said Samuel Finley, James Hudson, and Robert Campbell, as above named, shall commence on the first day of April, A. D. 1841, and to be final and conclusive, to the decease of the said Mary McKee, now Mary McAninch, the said Wm. Laughlin yielding and binding himself, his heirs and assigns, to pay to the said Alexander McAninch, or Mary his wife, the yearly interest of the one-third part of the said valuation, during her natural life, and no longer. And, we further agree, in these presents, to bind ourselves, our heirs and assigns, executors and administrators, in the penal sum of one thousand dollars, good and lawful money, each to the other, his heirs and executors and administrators, to abide and stand to the said valuation and appraisement, as above stated, as

witness our hands and seals, this twenty-eighth day of April, in the year of our Lord one thousand eight hundred and forty-two.

MARY McANINCH, [L. S.]
ALEX. McANINCH, [L. S.]
WM. P. LAUGHLIN. [L. S.]

Subscribing witness called.

Benjamin Cross, examined.—Mary McAninch was a married woman when this was signed.

Objected to by defendant; that it was not properly acknowledged. It is an agreement in relation to land. Objection overruled and defendant excepts.

Article read.

Report of said referees written on the back of the article of agreement, read as follows:

"We, the within named Samuel Finley, James Hudson and Robert Campbell, did meet at the request of the within named parties, on the said premises, on the twenty-ninth day of April, 1842, and being organized, did proceed to view the premises within mentioned, and did value and appraise the said plantation at the sum of fifteen hundred dollars, or the yearly rent, or interest of ninety dollars a year, as witness our hands and seals the above date."

Plaintiff also proved after exception by defendant, that Wm. P. Laughlin continued in possession of the premises under this agreement, and that the first year's rent of $30 was paid by him to plaintiff, and that defendant expressed himself satisfied with the proceedings and result, *and refused an offer to take the land off his hands and pay him the rent fixed by the referees*—and that he has continued in possession of the premises, and that Mary McAninch is still living.

Defendant's counsel offered in evidence the will of Jas. McKee, dated 28th March, 1809, proven 25th April, 1809, to be followed up with proof that the property was sold at sheriff's sale, as the property of Henry McKee—that he left two sons, one of them named Henry, and that the title to the land vested in him. This offer to show want of consideration, and that *she* had no interest in the land as set out in this agreement; and that this agreement was entered into by mistake of the parties as to their rights; and that the widow accepted under the will.

Objected to, because it proposes to go into the merits of the questions admitted and settled by the article of agreement; and at most the evidence offered only proposes to show a mistake of the parties as to their rights; a mutual mistake of the law, with a full knowledge of the facts.

Objection overruled, and *plaintiff* excepts.

This was plaintiffs *first* bill of exceptions.

Evidence was given, on the part of defendant, that on the day of

[McAninch and Wife *v.* Laughlin.]

sale of the personal property, in 1809, the widow got such articles of personal property as she was allowed under the will, except a saddle ; that some other article was spoken of, and not agreed on, and that it might have been the saddle that was not furnished her —nothing said about it at the second sale of personal property. That the will was read in the presence of the widow. That the executors said they were willing to give what was specified in the will to her.

The act of assembly in force at the time of the death of James M'Kee, sen'r., in relation to a bequest in lieu of dower, enacts that "if any testator after the passage of this act, (the act of 4th April, 1797,) shall devise or bequeath to his wife, any portion of his estate, such devise or bequest shall be deemed and taken to be in lieu and bar of her dower, out of the estate of her deceased husband, in like manner as if the same had been so expressed, unless such testator shall, by his last will and testament declare otherwise, any law, usage, or custom of this commonwealth to the contrary notwithstanding. Provided always, that nothing in this section contained, shall deprive the widow of her choice, either to dower, or the estate so devised or bequeathed."

WILSON, J., charged the jury *inter alia*, that under this act of assembly, she could not be entitled to both the bequests and the dower in the land, and if she took the property bequeathed to her, after knowing the provisions of the will, it would amount to a choice of the estate bequeathed, and Henry and the purchaser of his estate would take the land discharged from her right of dower. To bar her it must be distinctly shewn she took under the will. That if she accepted, she had no interest in the land, or any right to claim dower; and in this event, defendant would derive no benefit under his contract with her to pay for her claim of dower, and that there would then be no consideration for the agreement by defendant.

Verdict was rendered for defendant, Laughlin.

It was assigned for error :

1st. The court erred in admitting the evidence offered by defendant, constituting the plaintiffs' first bill of exception. The evidence offered and admitted only went to establish the fact that the defendant was mistaken as to the right of the plaintiffs—"the evidence discloses a case where there was neither fraud, misconception nor surprise, but a mutual mistake, a misconception of law by both parties."

2. The court erred in their charge to the jury, " it is contended" the court say, " that ignorance of the legal effect or operation of the agreement entered into between the parties will not serve as a defence. This, as a general principle, is correct, but to it there are exceptions. Contracts based upon a supposed state

[McAninch and Wife *v*. Laughlin.]

of things which had no existence in fact, will be relieved against on the ground of mistake; and it is stated in Rankin *vs*. Mortimer 7 *W*. 374, that a material mistake of law is an exception to the rule."

*Blair*, for plaintiffs in error.—The facts were equally within the knowledge of both parties—the only question was one of pure law, and defendant pleads his ignorance of the law.

If the defendant did not know that the widow had received the personal property bequeathed to her by the will, he could easily have ascertained. When each party is innocent, and there is no concealment of facts which the other party has a right to know, and no surprise or imposition exists, the mistake or ignorance, whether mutual or unilateral is treated, as laying no foundation for equitable interferences. It is strictly *damnum absque injuria* ; *Story's Eq.*, vol. 1, § 151.

The will in this case proved in 1809, no act of assembly till 1811 prescribing a time, or the manner in which the election of a widow to take under the will, or not. If the act of 1811 applies to wills proved before, no proceedings were ever had against the widow to cause her to determine her choice, and her right to elect still exists, unless her reception of the articles devised to her, amounts to a choice, and that it would not; 2 *Yeates* 302; 3 *Bro. Cha. Ca.* 255.

*Orbison*, for defendant, Laughlin.—To the first error assigned, that if the defendant could avail himself of a want of consideration, as a defence, then the evidence to show want of title in the plaintiffs, was admissible. The admission of the evidence objected to was right, if the court did not err in their charge as to what would bar dower, and in relation to defendant using the failure in the title as a defence.

The charge of the court was more favorable to plaintiffs than the law would allow ; for, in order to make the want of consideration an available defence to defendant, he was required to satisfy the jury that there was a *mutual mistake*.

He cited 1 *S.* & *R.* 438; *Id.* 42; 10 *Barr* 74; 7 *Watts* 374. That the widow was barred of dower, 2 *Yeates* 302; *Id.* 389.

The opinion of the court was delivered by

GIBSON, C. J.—By decisions here and abroad, the principle of Lansdown *vs*. Lansdown, *Mosely Rep*. 264, has been exploded. It was rejected in Rankin *vs*. Mortimer, 7 *Watts* 372. The Supreme Court of New York alone is the only one that has hesitated ; because it leaned, in its latter days, towards the subtle equities of the civil law. Chancellor KENT certainly did not encourage the notion, that a mistake of law is ground of relief; for he puts the

[McAninch and Wife *v.* Laughlin.]

sale of a horse, dead, but not known to be so, as an instance of the distinction, between a mistake of law and a mistake of fact. Here the facts which constituted the basis of the bargain, were mutually understood. The defendant was bound to know the provisions under which he derived title; and he was bound to inquire whether the widow had elected to take dower, or the devise in lieu of it. The parties were or ought to have been, mutually informed of the facts on which they founded their agreement. The defence is that she took a benefit under the will, which excluded her right to dower. Be it so. But the facts were within the knowledge of both parties, and the mistake was in the judgment they formed of the legal effect of them. The plaintiffs have brought their action at law on a specialty; and a Chancellor would not interfere to rescind it.

Judgment reversed and *venire facias de novo* awarded.