IN

# THE SUPREME COURT.

OF

## PENNSYLVANIA.

WESTERN DISTRICT—PITTSBURGH 1864.

## Wilson *versus* Cochran.

*Vendee of real estate bound by known encumbrance or easement.—Right of vendee to detain purchase-money.*

1. A purchaser with a covenant of general warranty cannot, before eviction, detain purchase-money on account of a known encumbrance or defect.

2. Whilst a right of way successfully asserted against a vendee may be a breach of covenant of general warranty, if the purchaser have bought without notice of it, yet the law is that he shall perform his engagements whenever his knowledge and the state of facts continue to be the same they were at the date of the purchase.

ERROR to the District Court of *Allegheny county*.

These were actions of debt brought by William Cochran against Samuel A. Wilson, on three bonds given by the defendant to the plaintiff, for the purchase-money of a tract of land in Jefferson township, Allegheny county, amounting in the aggregate to $1800. A deed, with general warranty of title, was executed and delivered at the time the bonds were given. On the trial the plaintiff gave these bonds in evidence, and rested.

The defendant claimed a deduction from the amount of these bonds, on account of damages alleged to have been sustained by reason of a right of way over the land granted by deed, by the

(107)

[Wilson *v.* Cochran.]

plaintiff's vendor, to one Stevenson, who conveyed to Shultz, who used and exercised that right, thereby evicting the defendant, as he alleged, from a portion of the premises.

In order to sustain this defence, he gave in evidence a deed from Thomas Morrow and wife to Thomas Stevenson, dated the 10th of May 1843, and recorded the 14th of April 1857, for a certain tract of land, being a portion of a larger tract owned by Morrow, of which that conveyed by the plaintiff to the defendant was a part. The deed from Morrow and wife to Stevenson contained the following clause, to wit: "And the said Thomas Morrow doth also covenant and agree with the said Thomas Stevenson, his heirs and assigns, to allow him, his heirs and assigns, a reasonable road, in order to go to and from his lot, through the said Thomas Morrow's land, where it may be most convenient to both parties, and do the least damage to the said Thomas Morrow, his heirs and assigns."

Thomas Stevenson and wife, by deed dated and recorded the 1st of May 1861, conveyed the same tract of land to Joseph Shultz, with the grant of the same right of way. Under these deeds, Shultz had used this private way over the land sold and conveyed by the plaintiff to the defendant, and the testimony showed that Stevenson, and those claiming under him, used it ever since 1843, a period of about seventeen years before the defendant purchased.

The defendant's title was also derived from Thomas Morrow.

On the 28th November 1851, Thomas Morrow and wife conveyed this tract of land, over which this right of way is claimed, to William Cochran, with general warranty of title, which deed was recorded the 22d of October 1859. This deed is silent as to the right of way in controversy.

On the 22d of May 1860, the plaintiff, Cochran, conveyed the same tract of land, with general warranty of title, to Wilson, the defendant, who gave the bonds for the purchase-money, on which suit was brought.

The defendant, after having given the foregoing evidence, read, under exception, the deposition of John T. Cochran, Esq., for the purpose of showing, that at the time the deed was drawn up, and some time before its delivery, the plaintiff stated to the defendant that he had a clear title; and that the defendant purchased on the strength of that declaration, without an examination of the records, where the grant of this right of way would have been found, and without any actual knowledge of its existence.

The defendant's son was then called, who testified that he moved on the place, under his father, in the spring of 1860; that Stevenson then occupied his lot, and used this road during that year, and the following year, until he sold to Shultz.

During the first year there were no gates or bars, and the road was not fenced. It was open. In the summer of 1861, after Shultz moved there, witness put two pairs of bars and a gate there. In the fall of that year, Shultz gave him notice to take down his bars or he would do it himself; and after the expiration of the time fixed in the notice, Shultz took down the bars, and he and his tenant have passed through there ever since.

The defendant also introduced evidence to show the cost of fencing the road on both sides, and the damage he sustained by reason of this road passing through his land, and closed.

The plaintiff then called Benjamin Gillmore, who testified: "I went with the defendant to see the plaintiff about the purchase of this farm, think in early part of January 1860. Cochran, Wilson, and myself walked over the farm. We started out on this road, in the direction of the lot then occupied by Stevenson. Cochran showed him the lines between him and old Mr. Cochran. We went to the Stevenson lot, and he showed him the line coming out of the old place. We went round the lines, till we saw nearly all of it. Wilson examined the improvements, &c. They then talked of the price, but did not agree on it. Cochran then called his attention to the matter of Stevenson's lot. He stated that Stevenson had bought the lot from Morrow, and he had given Stevenson a right of road in his deed or article (can't say which he said). Then afterwards Morrow sold the balance of the place to Cochran, and he wished him to understand that Morrow had given him a clear deed, or that there was nothing mentioned in the deed about the road, or something to that amount. Don't remember distinctly the words—that Morrow had given Stevenson a deed before his deed, and he did not know what effect that might have. He said he wished Wilson to understand that this road was in Stevenson's deed, and not in his, and he did not know what effect that might have. * * * Cochran stated the words that were in Morrow's deed to Stevenson, but I don't recollect what they were."

The case had previously been before the court below, in which judgment was entered against defendant for want of a sufficient affidavit of defence, but the judgment of the court below was reversed on error and a *procedendo* awarded. Under the pleas of set-off and payment with leave, &c., the testimony above mentioned was given.

The defendant requested the court below to instruct the jury,

1. That the vendor's covenant of general warranty covers a known defect in the title—in the absence of express provision to the contrary—and if such covenant be broken by actual eviction under a claim of right prior to the bringing of an action for purchase-money, the vendee may successfully defend to the extent

[Wilson *v.* Cochran.]

of his damages, notwithstanding the defect in the title was known to him prior to his purchase.

2. That if the jury believe from the evidence, that subsequently to the execution of the deed from the plaintiff to the defendant, and before the bringing of this action, Joseph Shultz gave notice to the defendant to remove his bars and admit him to exercise his right of way, threatening that if the defendant did not do so, he (Shultz) would throw them down, and that Shultz, in pursuance of such threat, did actually throw down defendant's bars and enter upon his land, and did exercise his right of way over defendant's land (and still continues to do so), this amounted to an eviction of the defendant, and the plaintiff's covenant of general warranty was thereby broken, notwithstanding the defendant may have known of said defect in the title prior to his purchase; and the defendant has a right to have his damages for such breach of covenant assessed in this action.

Should the court refuse the instructions prayed for in defendant's second point, then they are respectfully requested to charge the jury,

3. That the evidence in the cause, assuming the whole to be true, does not show that the defendant had such clear and positive notice and knowledge of the right of way in question as would preclude his setting up the alleged breach of the plaintiff's covenant of warranty as a defence to this action.

4. That if the jury believe from the evidence that there was such an eviction of the defendant as is suggested in his second point, the plaintiff's covenant of warranty was thereby broken, and the defendant is entitled to have his damages assessed in this action, notwithstanding the jury may believe the testimony of Benjamin Gillmore as respects the declarations and statements made by the plaintiff to the defendant relative to the right of way in question.

5. That if the jury believe from the evidence, that after the sale by plaintiff to defendant, and before the bringing of this action, Joseph Shultz, the claimant of the right of way in question, gave defendant notice to remove his bars and admit him to exercise his right of way, threatening that if defendant would not do so, he (Shultz) would throw them down, and that said Shultz, in pursuance of said threat and assertion of his claim, did actually throw down defendant's bars, and did enter upon his land, and exercised, and still continues to exercise, a right of way over defendant's land, this amounted to an eviction of the defendant, and a breach of the plaintiff's covenant of warranty.

The court below negatived all these points, and instructed the jury that if the defendant had knowledge of the right of way prior to his purchase, his defence failed.

[Wilson *v.* Cochran.]

There was a verdict and judgment for plaintiff for the amount of the bonds, with interest. Whereupon the defendant sued out this writ, averring that the court erred in not affirming the points above mentioned.

*Hamilton & Acheson,* for plaintiff in error.

*White & Slagle,* for defendant in error.

The opinion of the court was delivered by

WOODWARD, C. J.—Cochran conveyed land to Wilson by a deed which contained a covenant of general warranty, and then brought this suit for part of the purchase-money. Wilson put in an affidavit of defence alleging a paramount title in one Shultz to a right of way, or private road across the land—that he purchased without knowledge of the easement—and that he had been virtually evicted from part of his premises by reason of the use of the right of way.

Upon these allegations we ruled, when the case was here two years ago, that Wilson ·must be admitted to make his defence, and, if he proved the grounds alleged, that he would be entitled to defalk his damages against the balance of purchase-money.

But upon the trial, instead of the affidavit of defence being sustained, it was fully proved, and the jury found, that Wilson purchased with knowledge of Shultz's road, and actually walked it in company with Cochran pending the treaty of purchase.

The case as now presented, therefore, is that of a purchaser with a covenant of general warranty attempting to detain purchase-money on account of a known encumbrance or defect. We were of opinion, when the case was here before, and we still are, that the covenant of general warranty would embrace such a defect, though it be in the nature of an incorporeal hereditament, but manifestly no action could be maintained on such a covenant, and therefore purchase-money cannot be detained by virtue of it, until after eviction, and the evidence here failed to prove eviction. Indeed, there could be no eviction of that which was never purchased or possessed, and therefore, whilst a right of way successfully asserted against a vendee might be a breach of a covenant of general warranty, if the purchaser had bought without notice of it, yet the law is that he shall perform his engagements wherever his knowledge and the state of facts continue to be the same they were at the date of the purchase. In Hart *v.* Porter, 5 S. & R. 204, it was said that the intent that the purchaser was to run the risk of the title might be fairly inferred when he knew of the defect at the time of the purchase, and made no provision against it. To the same effect was the observation made in Furhman *v.* Loudon, 13 S. & R. 276, and repeated

[Wilson *v.* Cochran.].

in Lighty *v.* Shorb, 3 Penna. R. 452, that when the purchaser is aware of a flaw, and provides not against it, he takes the risk of it upon himself. See also Murphy *v.* Richardson, 4 Casey 293, and Bradford *v.* Potts, 9 Barr 37. This last case, Bradford *v.* Potts, was, like the present, a purchase with covenant of general warranty, but with actual knowledge of the defect, and the purchaser was remitted to his action on the covenant after he should suffer eviction, and was not permitted to withhold purchase-money. So in Juvenal *v.* Jackson, 2 Harris 519, it was said that a vendee who takes covenant against a known defect shall not detain the purchase-money as a further security against it, for the reason that the covenant would be nugatory if he did.

Where the covenant is actually broken at the time suit is brought for purchase-money, the purchaser, to prevent circuity of action, will be permitted to detain purchase-money to the extent to which he might recover damages upon the covenant. Some covenants are broken as soon as made, but a covenant of general warranty is only broken by eviction—and without evidence of eviction this purchaser has no ground to stand on. Eviction means a loss of something purchased; but if Wilson bought with Shultz's road open before his eyes, and the necessary inference is that he intended to buy subject to the easement, the mere enjoyment of the road by Shultz is not and cannot be eviction of Wilson. He has got all he bargained for with Cochran, and therefore he should pay as he agreed. Until he is interrupted in something conveyed to him by Cochran [and he knew Cochran could not convey Shultz's road], he has no remedy on the covenant he took for his protection, and therefore no right to detain purchase-money. As the case is now presented, the legal presumption is, that he compensated himself for the easement by a diminished price agreed to be paid for the land, and he must not compensate himself twice.

But it has been suggested that this mode of ruling the case is virtually impairing a written covenant by parol evidence. Not at all. The subject-matter of the conveyance, its condition, and peculiarities may be explained by parol without any contradiction of a deed. Do we contradict the conveyance of a tract of land when we permit it to be proved by parol that it is covered with timber, or is an improved farm, or contains a water-power, or has a private road upon it? If a vendee means to exclude proof upon such subjects he should take a more special covenant than a general warranty of title. But had he taken in this instance a covenant against private ways, it is *he* who would want the parol evidence to establish the breach. Indeed it is he who opens the door for parol evidence under the general covenant, for he proves the Shultz road by parol, and the plaintiff

[Wilson v. Cochran.]

only proves that the defendant bought subject to the road. We see no impeachment or contradiction of the conveyance by such evidence.

The several points made by the defendant seem to have been well answered, and the judgment is affirmed.