## Clark *v.* Lehigh & Wilkes-Barre Coal Company, Appellant.

*Contracts—Mining lease—Mistake of law.*

1. Where a party, with knowledge of all the material facts, and without any other special circumstance, giving rise to an equity in his behalf, enters into a transaction affecting his interests, rights and liabilities, under an ignorance or error with respect to the

rules of law controlling the case, courts will not, in general, relieve him from the consequences of his mistake.

2. Plaintiffs, in 1883, leased the coal under four tracts of land to defendant, which agreed to pay therefor certain royalties. The terms of the lease were performed for a period of about twenty years, after which defendant, while continuing to mine, refused payment of royalties, alleging that it was the owner of one of the four tracts demised, and that it had through accident and mistake, and believing and relying on the ownership by lessor, paid for more coal than was under the other three pieces of land, and was, therefore, under no further obligation to pay the lessor for coal mined, but was entitled to reimburse itself for such over-payments from that part of the premises which lessor admittedly owned. It appeared that defendant company was in fact the owner of one of the four pieces of land mined, but that plaintiffs had color of title thereto, and that all the facts concerning the disputed title were matters of record at the time the lease was made. There was no evidence of any mistake of fact, except the mere acceptance of the lease by the tenant. *Held,* the lower court did not err in deciding that if any mistake was made in the execution of the lease, it was purely a mistake of law which would not avail the lessee as a defense against the payment of the stipulated royalties.

Argued April 13, 1914. Appeal, No. 179, January T., 1913, by defendant, from judgment of C. P. Luzerne Co., October T., 1904, No. 1162, for plaintiff, dismissing exceptions to report of referee, in case of Mary T. Clark, in part to the use of Mary C. Parrish v. The Lehigh and Wilkes-Barre Coal Company. Before BROWN, MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Assumpsit for rent due under a coal lease. Before STRAUSS, J.

Exceptions to the report of Joseph D. Coons, Esq., referee.

The opinion of the Supreme Court states the facts.

The court dismissed exceptions to the referee's report and entered judgment in accordance with the referee's findings. Defendant appealed.

*Errors assigned* were in dismissing various exceptions to the report of the referee.

*Andrew H. McClintock,* with him *Arthur Hillman,* for appellant.—The conveyance under tract No. 4 was a sale, not a lease, and the parties stand in the relation of vendor and vendee: Denniston v. Haddock, 200 Pa. 426; Coolbaugh v. Lehigh and Wilkes-Barre Coal Co., 213 Pa. 28.

The defendant taking title by its various conveyances to the line of the road of which tract No. 4 is a part, took title to the centre of said road, leaving no vacant land.

If the relation of vendor and vendee obtains, the defendant had a right to an allowance for a defect in its title in so far as tract No. 4 is concerned: Comegys v. Davidson, 154 Pa. 534; Jenks v. Fritz, 7 W. & S. 201.

If defendant mined coal under tract No. 4 under a mistaken conclusion of law as to the title, this would be a sufficient warrant to cease paying for this coal which defendant owned itself at the time of the execution of the instrument and to which plaintiffs never had title: Cummings' App., 23 Pa. 509.

*Joseph S. Clark* and *George R. Bedford,* for appellees. —The defendant is estopped to deny plaintiffs' title: Denniston v. Haddock, 200 Pa. 426; Coolbaugh v. Lehigh & Wilkes-Barre Coal Co., 213 Pa. 28; Rhoades v. Patrick, 27 Pa. 323; MacDonald v. O'Neil, 21 Pa. Superior Ct. 364; Hamilton v. Pittock, 158 Pa. 457; Delaware, Lackawanna & Western R. R. Co. v. Foster, 212 Pa. 66; Lazarus v. Lehigh & Wilkes-Barre Coal Co., 228 Pa. 532.

Considered as a sale, the plaintiffs are entitled to judgment in the absence of allegation of fraud, accident or mistake of fact: Friedly v. Scheetz, 9 S. & R. 156; Lighty v. Shorb, 3 P. & W. 447; McAninch and wife v. Laughlin, 13 Pa. 371; Clapp v. Hoffman, 159 Pa. 531.

The fact that defendant was mistaken in law as to the ownership of tract No. 4 is no defense.

OPINION BY MR. JUSTICE MESTREZAT, July 3, 1915:

By an indenture of lease dated December 15, 1883, Mary T. Clark and her husband "demised and leased and to mine let" to the Lehigh & Wilkes-Barre Coal Company, defendant, all the coal underlying the Baltimore vein in and upon four contiguous pieces of land in Plymouth Township, Luzerne County; the first containing 25 acres and 30 perches, the second 80 perches, the third 94 perches, and the fourth 7 acres and 155 7-10 perches, "to have and to hold the said premises until the said party of the second part shall have mined and removed therefrom all the merchantable and minable coal." The lessee agreed to pay a royalty of thirty-five cents per ton for all merchantable coal mined and removed from the premises, and a fixed minimum cash rental of $5,000 per annum during the continuance of the lease, payable in quarterly installments, and for said payments was entitled to remove during each year 14,285 tons of coal. If in any year, the lessee failed to mine as much coal as it had paid for in any such year, it was permitted to mine the deficiency in any subsequent year of the term without further charge. When the coal is exhausted so as to render the production of the annual fixed minimum impracticable, the lessee is relieved from the production of the full annual minimum and only required to mine and pay for such quantity as can be mined and removed. The agreement also provides payment, not included in the annual rental, for pea coal.

By deed dated April 5, 1895, Mary T. Clark, lessor, conveyed to Mary C. Parrish an undivided one-half interest in the coal and the lease, and the representatives of these two parties are the plaintiffs in this action.

It appears that from the beginning of its operations under the lease until October 1, 1903, the lessee mined and removed coal from all four of the demised pieces and paid to the lessor all the fixed minimum cash rentals and the royalties as they accrued. All the merchantable and minable coal has not been mined from the premises and

while the lessee company continues in possession, mining and removing the coal, it refused payments of any kind after said date because, as it alleges, the ownership of the fourth piece of land described in the lease had never been in the lessor, that it had, through accident and mistake and believing and relying on the ownership by the lessor, paid for more coal than was in the other three pieces of land, and was, therefore, not only under no further obligation to pay the lessor for coal mined, but is entitled to reimburse itself for such overpayments from that part of the premises which the lessor admittedly owns. By a written agreement made by the parties on the trial of the cause, it was stipulated that the amount paid in royalties is equal to the amount of coal mined under the lease and the coal yet unmined in the first, second, and third pieces described in the lease; but that the coal unmined in the fourth piece described in the lease is more in quantity and value than the installments of rent sued for in this case.

The fourth piece of land described in the lease is a strip six rods wide that, on the earliest surveys, was left between lots lying on the east and west, and was called a road on those surveys. The lands on both sides of the road, calling for it as a boundary, were patented to various persons, and the titles subsequently became vested in the defendant company. The road was never opened and a considerable part of the land within its lines was built up and plotted in building lots, while a large part was not practicable for road purposes because of its grades.

It is conceded that the plaintiffs are the owners of the first, second, and third pieces of land described in the lease, but the defendant denies that they, at any time, owned the fourth piece. The plaintiffs claim title to the fourth piece through a patent issued to one John Turner by the Commonwealth in 1821 for a larger tract containing about twelve acres of land, the survey having been made in 1820 in pursuance of a warrant issued in

1819. The Turner patent and survey are subsequent to the patents issued to the original grantees of the adjacent properties now owned by the defendant company. The defendant claims that it owns the strip of land covered by the Turner patent by virtue of its ownership of the lands adjacent to and abutting on both sides of the road.

This is an action of assumpsit brought by the plaintiffs on the lease to recover from the defendant three quarterly installments of rent of twelve hundred and fifty dollars each, accruing respectively on January 15, April 15, and July 15, 1904, with interest from the maturity of each installment. The defendant company filed an affidavit of defense in which it admitted the lease, denied that the plaintiffs owned the fourth piece of land at the date of the execution of the lease, averred that, through accident and mistake and believing in the ownership by plaintiffs, it paid the rents and royalties under the lease based on the total acreage as described in the lease, and further averred that as the plaintiffs were not the owners of the fourth piece of land the defendant had overpaid the plaintiffs fifty thousand dollars under the terms of the lease and claimed a set-off to that amount against the plaintiffs.

The case was referred to a referee who held that the plaintiffs were not the owners of the fourth parcel of land and the title thereto was in the defendant, that if the agreement was to be regarded as a lease, the lessee could not dispute the title of its landlord, but apparently held that the agreement was a sale of the coal in place and that the parties sustained the relation of vendor and vendee. He also held that the plaintiffs had color of title which, coupled with facts about the surface conditions, afforded sufficient consideration for the agreement on the part of defendant to mine and pay for the coal, that the defendant entered into the agreement with knowledge of the facts and is estopped from setting up its title to the land as a defense to payment of the rent

sued for, that the sale was an entire and unseverable sale of the four pieces of land, and that as to the defect in the title there was at most a mistake of law which would not avail the lessee as a defense against the payment of the stipulated royalties. The court confirmed the referee's report. The defendant has appealed.

The appellant contends that it has the right in this action to an allowance for a defect in the title so far as parcel No. 4 is concerned, and that if it mined coal in parcel No. 4 under the lease but by a mistaken conclusion of law as to title it is sufficient warrant to cease paying for the coal which it owned itself at the time of the execution of the instrument and to which plaintiffs never had title.

We think the learned referee and court below were right in holding that the defect in the plaintiff's title to the fourth piece or tract of coal is no defense to this action for the three quarterly installments of rent due under the coal lease of 1883. The ground on which relief is sought is that at the time the lease was executed the lessee and not the lessor was the owner of the fourth tract of land, and that the lease was entered into by reason of a mutual mistake of law as to the title to the tract. The only evidence of the alleged mistake is that the lessee, although the owner of the land at the time, entered into the contract and thereby purchased and agreed to pay to the lessor the stipulated price for the coal. There is no evidence in the record as to what occurred between the parties during their negotiations and at the time of the execution of the lease. From the importance of the transaction in a financial point of view, we must assume that both parties were represented by counsel. The deeds and other muniments of title were on record, and, therefore, each party knew, not only his own but the other's title to the land. The plaintiff's title had its inception in a patent issued by the Commonweath in 1821 which was antedated by a patent issued to the defendant's predecessor in title for the land abutting on

both sides of the strip of land in question which was called a road. We must, therefore, assume that the parties knew at the time they executed the lease that the lessee was the owner of the land, and there is nothing in the record to rebut the presumption. In such cases, the purchaser is presumed to receive compensation in the collateral benefits of a bargain and equity will refuse relief: Perkins v. Gay, 3 S. & R. 327; Lighty v. Shorb, 3 P. & W. 447; Wilson v. Cochran, 48 Pa. 107; Lazarus v. Lehigh & Wilkes-Barre Coal Co., 246 Pa. 178.

The mere fact that the lessee took the lease is not sufficient of itself to show that there was any mistake as to the title to the premises at the time the contract was executed. The leased property consisted of four small contiguous pieces of coal, claimed by the lessor, none of which with the possible exception of the first was large enough for a coal operation. The lessor manifestly would desire to let the coal under the four pieces if she let any of it, as working the small tract as a separate operation would not be practicable. The lessee owned the adjacent coal. The lessor, of course, claimed title to the tract but the record, which was notice to both parties, showed a better title in the lessee. This was the situation which confronted the parties when they were negotiating for the lease and it was subsequently executed. It is, therefore, more than probable that the parties and their counsel discussed the title, and, that while the lessee company asserted its own title, agreed to take the lease as a compromise of the conflicting claims to the title because of the advantages which would thereby accrue to it. At all events there is not a particle of evidence save the taking of the lease by the lessee, and that is wholly insufficient, to show that there was any mistake as to the title of either party when the lease was executed. Twenty years have elapsed since the execution of the contract, during which time the lessee has operated the coal and paid the rentals, and direct and satis-

factory proof of the alleged mistake should be produced before a chancellor is moved to rectify it.

It is conceded that if the lessee was induced to enter into the lease by a mistake it was one of law and not of fact. The land in question is what was known as a "Commissioner's Road," and the alleged mistake was in construing the defendant's title to the adjacent land as extending to the edge of the road and not to its center. As pointed out above, there could not have been a mistake of fact, as the title of each party was of record and hence the parties had all the facts before them when the lease was made. It is not alleged that the lessee was induced to enter into the lease by any fraud, misrepresentation, concealment of facts, or other inequitable conduct on the part of the lessor. There are no special circumstances or facts in the case, disclosed by the record, to induce a chancellor to give relief to the complaining party. As suggested above, the contract may have been advantageous to the lessee company notwithstanding it was the owner of the fourth piece of coal. We are, therefore, dealing here with a mistake of law, pure and simple, unaided by any equitable consideration which should move a chancellor to grant relief. Under these circumstances, it is settled that equity will not relieve against a mistake of law: Good v. Herr, 7 W. & S. 253; McAninch and wife v. Laughlin, 13 Pa. 371; Light v. Light, 21 Pa. 407; Clapp v. Hoffman, 169 Pa. 531; Norris v. Crowe, 206 Pa. 438; Pennsylvania Stave Co.'s App., 225 Pa. 178; Untermehle v. Norment, 197 U. S. 40; Midland Great Western Ry. Co. v. Johnson, 6 House of Lords' Cases 798. The rule is stated by Mr. Pomroy (2 Pom. Eq. Jur. 3 Ed. Sec. 842) as follows: "The doctrine is settled that, in general, a mistake of law, pure and simple, is not adequate ground for relief. Where a party with knowledge of all the material facts, and without any other special circumstances giving rise to an equity in his behalf, enters into a transaction affecting his interests, rights and liabilities, under an ignorance

or error with respect to the rules of law controlling the case, courts will not, in general, relieve him from the consequences of his mistake." In assigning reasons for the rule, the learned author says, inter alia: "If ignorance of the law were generally allowed to be pleaded, there could be no security in legal rights, no certainty in judicial investigations, no finality in litigations." In Norris v. Crowe, supra, Mr. Justice DEAN directs attention to our cases, among them Wilson v. Ott, 173 Pa. 253, relied on by appellant, which he calls exceptions to the general rule and says that relief was not granted in those cases "solely on the ground of ignorance of the law; but there were in addition circumstances of great hardship resulting from the ignorance, or, in addition to the mistake of law, facts pointing strongly towards fraud or undue influence, yet which would not have been so certainly established as to warrant setting aside the contract." The learned judge then comments on the remarks in the opinion in Wilson v. Ott, supra, tending to throw doubt on the rule announced in Good v. Herr, supra, says no assault on the general rule was necessary, and reaffirms the doctrine by saying: "But nevertheless, we adhere to that rule as the law of this Commonwealth, that is, 'In no case is ignorance or mistake of the law with a full knowledge of the facts, per se, a ground for equitable relief.' "

The judgment is affirmed.