## In re Lower Saucon Township School District

*Asher Seip*, for the School District of the Township of Lower Saucon.
*Russell C. Mauch*, for the School District of the Borough of Hellertown.

STEWART, P. J., September 28, 1931.—The School Directors of the Township of Lower Saucon presented a petition to court asking for a rule on the School Directors of the Borough of Hellertown to show cause why the appor-

tionment and adjustment made and entered into on the first Monday of July, 1920, between the two school districts should not be opened and reviewed, and after such rule is made absolute, the court to appoint commissioners to make a true, revised and correct apportionment and adjustment of the property and indebtedness between the said school districts, as of the effective date of the annexation of a part of the Township of Lower Saucon to the Borough of Hellertown. The School District of Hellertown filed an answer. The facts in dispute were agreed upon, of which the following is a statement:

On May 12, 1919, the Borough of Hellertown, by its council, passed an ordinance annexing a portion of Lower Saucon Township to that borough. That ordinance was approved by the chief burgess, and no appeal was taken from the action of council. A certified copy of the proceedings was filed in the office of the clerk of quarter sessions of this county on July 7, 1919, and notice of the same on the same day was given to the County Commissioners of Northampton County. The annexation to the Borough of Hellertown became legally effective on July 7, 1919.

On May 26, 1919, the City of Bethlehem, by its council, passed an ordinance annexing another portion of Lower Saucon Township to that city. That ordinance was approved by the mayor and no appeal was taken from the action of council. The annexation to the City of Bethlehem became legally effective on June 5, 1919.

The directors of the School Districts of Lower Saucon and Hellertown, under the provisions of the School Code of 1911, P. L. 309, 311, made an amicable apportionment and adjustment of their property and indebtedness on the first Monday of July, 1920, whereby the School District of Hellertown paid the School District of Lower Saucon the sum of $15,500, and the School District of Lower Saucon conveyed certain parcels of real estate to the School District of Hellertown.

The question involved is well stated in petitioner's brief as follows: "In the instant case, there was no fraud nor collusion. There was, however, a direct violation of the law in the making of the settlement, in that the effective date of the first annexation was under a misapprehension ignored, and in that settlement was not first made between the old and the first new district and thereafter settlement made between the remainder of the old and the second new district. This resulted in an unjust settlement between Lower Saucon School District and Hellertown School District, in that Hellertown School District paid less money to Lower Saucon School District than otherwise would have been the case." That the school directors had power to make the adjustment of July, 1920, cannot be disputed. The School Code expressly provides for it. Prior to the passage of the code, amicable adjustments were favored by the courts. In Rouseville Borough School District v. Cornplanter Township School District, 29 Pa. Superior Ct. 214, on page 221, Judge Beaver said: "The Act of June 24, 1895, P. L. 259, was passed for the purpose of establishing a mode of ascertaining the manner in which an adjustment of all indebtedness and property rights between the school district of a township and the school district or districts of one or more boroughs, erected in whole or in part from such township, might be made. Evidently this was intended to be resorted to where the several school districts interested could not agree. It certainly did not prevent the districts from endeavoring to arrange a mutually satisfactory division between themselves." In Everson Borough, 31 Pa. Superior Ct. 170, the syllabus is: "Where a borough is formed out of a portion of a township and a new school district thereby created, the two school districts may agree that in consideration of the new district having within its limits most of the property, all of the bonded indebtedness of the

old district shall be assumed by the new district, and upon such an agreement being submitted to the court, a decree in accordance therewith will be entered without the necessity of hearing any testimony." The sole ground for setting aside the adjustment of July, 1920, seems to be that there was a mistake made as to the effective date of the annexation to the Borough of Hellertown. The proceeding in that case having been first commenced, it was presumed that the legal date of that annexation preceded the annexation to the City of Bethlehem; whereas, by reason of the difference in legislation, the annexation to the City of Bethlehem was the one first legally effective. It is alleged in the petition that proceedings are still pending between the Township of Lower Saucon and the City of Bethlehem for an adjustment of their property and indebtedness, but that proceeding can have no effect on the present proceeding. In Appeal of the School District of Aleppo, 96 Pa. 76, it was decided that the adjustment should be made between the old school district and the one first created, and that a second district could not intervene in the proceedings. Unquestionably the proper proceeding would have been to have adjusted matters between the township and the City of Bethlehem; but due to a very natural mistake of law as to the priority of the annexation, for which no one can be censured, the school authorities of the township and of the borough amicably and honestly adjusted their property and indebtedness, and the borough authorities paid the school district $15,500 and received deeds for their property. In addition to that, there has been unreasonable delay in this matter, and lapse of time has rendered it inequitable to change this executed sale and agreement. The general rule is: "In no case is ignorance or mistake of the law with a full knowledge of the facts per se a ground for equitable relief." In the leading case of Good v. Herr, 7 W. & S. 253, the syllabus is: "Equity will not interfere for the relief of a party who claims on the ground of a mistake of law. Hence, distribution having been made of the estate of an intestate among those who were supposed to be his collateral heirs-at-law, and all of whom joined in a release to the payer, one of them cannot afterwards recover a greater amount on the ground of their mutual mistake of the law as to who were the heirs-at-law of the intestate." Mr. Justice Rogers gives an excellent discussion of the law up to that time, and that case has been followed without any variation down to Wilson et al. v. Ott et al., 173 Pa. 253, where the Supreme Court cited with approval two textbook authorities changing the earlier rule, but the doctrine of that case was short-lived, and the Supreme Court in Norris v. Crowe, 206 Pa. 438, returned to the doctrine of Good v. Herr. Since that case two authorities may be cited in support of the original doctrine: Clark v. Lehigh & Wilkes-Barre Coal Co., 250 Pa. 304, and Shields v. Hitchman, 251 Pa. 455.

Again, this settlement of July, 1920, was fully executed at the time. In Rockafellow v. Baker, 41 Pa. 319, the first syllabus is: "An executory contract in which there has been a total failure of consideration will not be enforced either at law or in equity, but when the contract is executed a court of equity will not interpose to rescind it except for fraud or palpable mistake." In Geddes's Appeal, 80 Pa. 442, it is said: "It is to be remembered that the parties are not before us upon a bill seeking specific performance. The contract was fully executed several years ago. We are now asked to undo all this and remit the parties to their position before the sale. A court of equity should move with cautious and reluctant steps upon such a path as this, for it is a very narrow one. Nothing but fraud or palpable mistake is ground for rescinding an executed contract: Rockafellow v. Baker, 41 Pa. 319; Graham v. Pancoast, 30 Pa. 89, 97; Nace v. Boyer, 30 Pa. 99, 109. Mistake is not alleged.

The plaintiff has shown no such clear fraud as would justify us at this late day in disturbing this transaction." In Nerve Food Co., Ltd., *v.* Robertson, 199 Pa. 486, the syllabus is: "A bill in equity for the rescission of an executed contract of sale will not be sustained where it appears that the sale was made four and one-half years before the bill was filed, that under the agreement the defendant had transferred to the plaintiff the right to letters patent and trademark, the good-will of a business, and certain personal property, and that the defendant had committed no fraud or misrepresentation." In Felin v. Futcher, 51 Pa. Superior Ct. 233, many authorities are reviewed by Judge Head.

Another reason why this petition should not be granted is the lapse of time. All of the proceedings in reference to annexation contemplate speedy action by the parties. The time during which an appeal may be taken is limited by the act. Section 111 of the School Code of 1911 provides as follows, referring to the adjustment between the borough and school district: "Such adjustment and apportionment of property and liability shall be made by the boards of school directors of the several districts concerned before or during the first school year after such boundaries have been changed." Again, section 112 provides: "In case the boards of school directors of said several school districts cannot make such amicable apportionment and adjustment of their property and indebtedness, in compliance with this act, before or during the first school year beginning after any such change in their boundary lines is made, then, in that case, any one of such school districts may, at any time within the succeeding school year, present its proper petition to the court of common pleas of the county in which such school district is located." That section 112 was amended by the Act of July 20, 1917, P. L. 1134, as follows: "and where, by reason of the changing of the boundary lines of any city, incorporated town, borough, township or independent school district, prior to the passage of this amendment, the adjustment of indebtedness between the school districts affected has not been made as required by this section, such adjustment may be made, as herein provided, by petition filed in the court of common pleas within one year after the passage of this amendment." It will thus be seen that the legislature intended to fix a limit to these proceedings for adjustment, and the extent of that limit was two years. These proceedings, therefore, became final in 1921, and this court has no authority at this late date, twelve years after they took place, to set them aside. White Township School Directors' Appeal, 300 Pa. 422, shows conclusively that even the Supreme Court will not assume a wide jurisdiction in matters of this kind. The School Code is to receive a strict construction, and what was done by the school directors themselves or by commissioners appointed by the court is not to be lightly set aside. We feel that the above reasons are conclusive, but there is also a subject which we think would prevent making the rule absolute, and that is the delay in the matter.

It appears from the petition that this mistake of law was first discovered when the matter came before the commissioners, who were appointed by the court on June 28, 1926, to adjust the indebtedness between the School Districts of the City of Bethlehem and the Township of Lower Saucon. Without giving the exact date, it is averred that knowledge of the mistake was had at the time of the argument before the commissioners. That is to say, there was a delay of seven years at that time. The present petition was filed in the latter part of the year 1929. Such laches is too great to permit relief now. In Dunmore Borough School District *v.* Wahlers (No. 2), 28 Pa. Superior Ct. 39, the syllabus is: "The court of common pleas has no power to allow an appeal nunc pro tunc from a settlement of a school district treasurer's accounts by

borough auditors four months after the auditors' settlement has become absolute, in the absence of any allegation or proof that the settlement had been procured by fraud." Judge Morrison reviews the cases which bear upon the reports of borough auditors and shows that they are conclusive in the absence of fraud. The same doctrine is referred to in St. Clair Borough v. Souilier, 234 Pa. 27. Even in cases of fraud, a delay of six years is a bar to a bill to enforce alleged rights: Braddock Trust Co. v. Guarantee Trust and Safe Deposit Co., 180 Pa. 529; Hilliard et al. v. Allegheny Geometrical Wood Carving Co. et al., 173 Pa. 1; Ridgway's Account, 206 Pa. 587; Brown v. Kemmerer, 214 Pa. 521; Kinter v. Commonwealth Trust Co., Exec'r, et al., 274 Pa. 436. In Stevens et al. v. D., L. & W. R. R. Co., 278 Pa. 284, the syllabus is: "No flexible rule can be prescribed as to the lapse of what period shall disentitle a suitor to an account. The court may refuse a decree even when an action is not barred by the statute. The question of laches does not depend, as does the statute of limitations, upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether, under the circumstances of the particular case, plaintiff is chargeable with want of due diligence in failing to institute or prosecute his proceeding." See, also, McGrann v. Allen et al., 291 Pa. 574. In this case the accounts of each of the school districts have been audited year by year. The School District of Hellertown has treated this property as its own. It may perhaps appear that the School District of Lower Saucon should have received more money, but it is too late to question the settlement.

And now, September 28, 1931, rule is discharged, at the costs of the petitioner.

From Henry D. Maxwell, Easton, Pa.