Heights Deposit Bank Case.

Argued March 5, 1940. Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Leo W. White,* with him *John W. Lord, Jr.,* Special Deputy Attorney General, *Orville Brown,* Deputy Attorney General, and *Claude T. Reno,* Attorney General, for appellant.

*Arthur Silverblatt,* for appellee.

OPINION BY STADTFELD, J., May 8, 1940:

This is an appeal by the Secretary of Banking from a decision of the Court of Common Pleas of Luzerne County, sustaining exceptions filed by Morris Greenstein to the third and partial account of the Secretary's administration as statutory receiver of the Heights Deposit Bank. The parties have filed an agreed statement of the facts of the case under Rule 56 of this court.

As disclosed by the agreed statement, on September 23, 1931, the Secretary took possession of the bank and determined to liquidate same. On that date, Greenstein was indebted to the bank on his note for $6,500 due November 22, 1931, and four deposit accounts bearing his name, with balances totaling $9,268.69, were carried by it. On November 18, 1931, following demand for payment of his note, Greenstein requested that the four accounts be set off against it, to the extent of his debt thereon, $6,500. The Secretary of Banking allowed a set-off of three of the deposit accounts aggregating $3,457.89, but refused as to the fourth account, which was an "alternative" or joint account in the name of Ida Wiseman, Greenstein's mother-in-law, or Morris Greenstein, which had a deposit balance of $5,810.80. In refusing to allow this set-off, the deputy receiver stated to Greenstein that he was not entitled to the set-off under the rulings of the Banking Department, and in reliance thereon, Greenstein thereupon paid $3,042.11 in cash to the bank, which was the balance of his $6,500 debt after credit for the allowed set-offs.

On September 29, 1932, the Secretary of Banking filed

his first and partial account, of which action, Greenstein and his mother-in-law received due and timely notice. Neither filed any exception thereto and the court below confirmed the account absolutely on December 3, 1932. In this account, the Secretary reported (1) payment to him of Greenstein's note for $6,500 on November 18, 1932; (2) allowance of set-offs for $3,457.89; (3) the deposit account for $5,810.80 to the credit of Ida Wiseman or Morris Greenstein; and (4) payment to them of two liquidating dividends totaling 25% of $5,810.80, or $1,452.70.

Thereafter, the Secretary filed a second and partial account and a supplement thereto on November 30, 1934, and January 15, 1935, respectively, to which Greenstein filed no exception, and these were confirmed absolutely on March 25, 1935. Three additional liquidating dividends totaling 25% to all depositors, including Wiseman-Greenstein for $1,452.70, were reported in a bulk figure in the second account.

In December 1936 Morris Greenstein made demand on the Secretary for allowance of set-off of the Wiseman-Greenstein account, previously refused in 1931, and a refund of his payment of $3,042.11 less the overpayment of liquidating dividends which he had received in the interim since 1931, but the demand was refused.

On December 24, 1937, the Secretary of Banking filed a third and partial account and on January 8, 1938, a supplement thereto. Morris Greenstein filed exceptions thereto based on the claim that he had made a mistake in paying the balance of $3,042.11 to the Secretary of Banking on his note and in not insisting that the fourth deposit of $5,810.80 in the name of himself or his mother-in-law be applied pro tanto to the payment of said balance of the note. He claimed that on account of said mistake and the refusal of the receiver so to apply the fourth deposit, exceptant's consequent payment of said balance of $3,042.11 with additional funds of his own, constituted an overpayment to

the Secretary of Banking of exceptant's debt, which overpayment exceptant claims amounts to $1,247.27, after giving credit for overpaid dividends received by exceptant and his mother-in-law, aggregating $1,794.84. After hearing held on the exceptions, the court below decided the case adversely to Greenstein and dismissed his exceptions, but upon oral motion, a re-argument was granted, after which FARRELL, J., rescinded his previous decision, sustained the exceptions and entered judgment for Greenstein in the sum of $1,247.27. This appeal followed.

The court below, in its second opinion, after the re-argument, bases its decision on the depositary agreement signed by Morris Greenstein and Ida Wiseman at the time the account was opened in both names on June 11, 1930, which agreement the court states, was not called to its attention at the time of the first argument. The agreement reads as follows: "It is agreed and understood that any and all sums that may from time to time stand on this account, to the credit of the undersigned depositors, shall be taken and deemed to belong to them as joint tenants and not as tenants in common, and in case of death of either, the Heights Deposit Bank is hereby authorized and directed to deal with the survivor as sole and absolute owner thereof. Witness our hands and seals this 11th day of June, 1930. (signed) Morris Greenstein; (signed) Ida Wiseman."

As to this agreement, the court below states, in its second opinion: "If the above quoted depositary agreement had been in evidence and called to our attention at the hearing and first argument, we would have been impelled to find that this was a joint account and that he had the right, when the bank closed, to have it set off against his indebtedness to the bank; and that if he had pressed his right at the time, the receiver would have been obliged to allow the set-off." It is in this conclusion that the court below erred. The court relied

on the case of *Jack v. Klepser,* 196 Pa. 187, 46 A. 479. The Supreme Court, in that case, in an opinion by McCOLLUM, J., held that a joint claim may be set off by one of the owners in an action against him for his own proper debt, *provided he has the express assent of his co-partners,* and there are no third interests to be prejudiced.

In the instant case, Morris Greenstein, at the time he asked to have the set-off allowed, did not have the assent of Ida Wiseman, his mother-in-law. The subsequent assent of Ida Wiseman, at the hearing on Morris Greenstein's exceptions, executed on August 16, 1938, dated and acknowledged on that day, of her interest in the joint deposit, did not alter the situation. In a supplemental memorandum submitted by counsel for appellee, attention is called to the testimony of appellee given at the hearing on August 16, 1938. He testified that Ida Wiseman had "indicated her willingness to allow this account to be offset against (his) individual liability." This testimony obviously refers to the formal assignment of her interest in the deposit account, dated and acknowledged *on the same day.* It was obtained too late.

Michie on Banking, Vol. 5, par. 159, states: "Where a depositor in a bank which has made an assignment requests the trustees to allow such deposit as a credit on a note due by the depositor to the bank, and payable at a future day, and, receiving no reply from the trustee before the maturity of the note, voluntarily pays the note at maturity, he cannot thereafter have his deposit set off against the amount of the note. And where depositors' notes due a bank and transferred to a Federal Reserve Bank either as collateral or rediscounts, were on the bank's insolvency, paid by the maker to the Reserve Bank under protest, the makers' right to set off their deposits in the insolvent bank against the notes so paid was extinguished, regardless of any

alleged false or fraudulent representations by the Reserve Bank's agent inducing payment of the notes."

The payment by Greenstein was entirely voluntary, with full knowledge of all the facts, without compulsion, and no fraud or duress is charged. It was made to satisfy Greenstein's undisputed liability upon a debt lawfully incurred and owed to the bank. Greenstein urged that the payment was induced by a mistake of law as to his right of set-off, and, therefore, that he was entitled to restitution.

A voluntary payment of money under a claim of right, cannot in general be recovered back. There must be compulsion, present and potential in inducing the payment, by force of process, available for instant seizure of person or property, when the party so paying must give notice of the illegality of the demand and of his involuntary payment: *Peebles v. City of Pittsburgh,* 101 Pa. 304; *Harvey v. Girard Nat. Bank,* 119 Pa. 212, 13 A. 202.

In *Westfield v. Houtzdale Bank,* 1 Dist. Rep. 767, the syllabus well states the conclusion: "Where one had a deposit in an insolvent bank at the time it suspended, and said bank held against him a note not yet due, and he voluntarily paid his note, in ignorance of his right of set-off, he cannot recover back from the receivers of the bank the erroneous payment."

In *U. S. Bung Mfg. Co. v. Armstrong,* 34 Fed. 94, the United States Circuit Court of Appeals (S. D. Ohio, W. D.) held that the voluntary payment by the maker of a promissory note, with a full knowledge of the facts, operates as an abandonment and waiver of all right to set off cross demands or independent debts, and a bill disclosing such facts presents no case for equitable relief by way of equitable set-off.

Even if there had been a mistake of law, to which we cannot assent, appellant would not be entitled to relief. The general rule is stated in Pomeroy's Equity Jurisprudence, 4th Ed., Vol. 2, Sec. 842, as follows: "The

doctrine is settled that, in general, a mistake of law, pure and simple, is not adequate ground for relief. Where a party with knowledge of all the material facts, and without any other special circumstances giving rise to an equity in his behalf, enters into a transaction affecting his interest, rights, and liabilities, under an ignorance or error with respect to the rules of law controlling the case, courts will not, in general, relieve him from the consequences of his mistake." And this is the law in Pennsylvania, as set forth in *Clark v. Lehigh & Wilkes-Barre Coal Co.*, 250 Pa. 304, 95 A. 462.

Both on principle and authority, appellant had no right of set-off at the time he made demand for the same. The assent of the joint owner of the deposit had not been obtained. The payment made by appellant was voluntary, and no right of restitution accrued by reason of assent obtained subsequent to that payment.

We are of the opinion that the court erred in allowing the set-off. The decree of the court below is reversed and the exceptions to the account of the Secretary of Banking are dismissed. Costs to be paid by the appellee.